Adrian G. DUPLANTIER, et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 79–2351.

United States Court of Appeals, Fifth Circuit.

Nov. 19, 1979.

Rehearing and Rehearing En Banc Denied Dec. 12, 1979.

Talley, Anthony, Hughes & Knight, Richard F. Knight, R. Bradley Lewis, Bogalusa, La., for plaintiffs-appellants.

Neil H. Koslowe, U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

AINSWORTH, Circuit Judge:

At issue in this class action brought by federal judges is the complex legal question of whether an act of Congress—the Ethics in Government Act of 1978—insofar as its provisions require federal judges annually to file personal financial statements available for public inspection, is violative of the Constitution of the United States.[1] After carefully balancing the interests involved we conclude that the Act is not unconstitutional. We therefore affirm, but on different grounds, the district court's denial of a preliminary injunction against enforcement of those provisions of the Act which pertain to the federal judiciary, and vacate the court's order staying enforcement of the Act pending determination of this suit.

I.

The Ethics in Government Act of 1978 was enacted to "preserve and promote the accountability and integrity of public officials . . . ."[2] Title III is that part of the Act[3] specially applicable to the federal judiciary and requires judges to file annual-

---

1. Pub.L.No.95–521, 92 Stat. 1824.

2. S.Rep.No.95–170, 95th Cong., 2d Sess. 1 (1977), U.S.Code Cong. & Admin.News 1978, pp. 4216, 4217.

3. Title III of the Ethics in Government Act of 1978 (28 U.S.C.App. § 301 et seq.) provides in pertinent part:

Persons required to file

28 USC app.

Sec. 301. (a) Within thirty days of assuming the position of a judicial employee, an individual shall file a report containing the information described in section 302(b).

(b) Within five days of the transmittal by the President to the Senate of the nomination of an individual to be a judicial officer, such individual shall file a report containing the information described in section 302(b). Nothing in this Act shall prevent any Congressional committee from requesting, as a condition of confirmation, any additional financial information from any Presidential nominee whose nomination has been referred to that committee.

(c) Any individual who is a judicial officer or employee during any calendar year and performs the duties of his position or office for a period in excess of sixty days in that calendar year shall file on or before May 15 of the succeeding year a report containing the information described in section 302(a).

(d) Any individual who occupies a position as a judicial officer or employee shall on or before the thirtieth day after termination of employment in such position, file a report containing the information described in section 302(a) covering the preceding calendar year if the report required by subsection (c) of this subsection has not been filed and covering the portion of that calendar year up to the date the individual left such office or position, unless such individual has accepted employment in another position as a judicial officer or employee.

(e) Reasonable extensions of time for filing any report may be granted under procedures prescribed by the Judicial Ethics Committee established pursuant to section 303(a) of this title (hereinafter in this title referred to as the "Committee"), but the total of such extensions shall not exceed ninety days.

. . . . . . . . .

Filing of reports

Judicial Ethics Committee. 28 USC app.

Sec. 303. (a) The Judicial Conference of the United States shall establish a Judicial Ethics Committee which shall be responsible for developing the forms for reporting the information required by this title and for receiving and making available, in accordance with the provisions of this title, the reports described in section 301.

(b) Each individual officer and judicial employee shall file the report required by this title with the Committee and shall file a copy of such report as a public document with the clerk of the court on which he sits or serves.

(c) In the performance of its functions under this title, the Committee, with the approval of the Judicial Conference of the United States, shall—

(1) develop the necessary forms and promulgate such rules and regulations as may be necessary;

(2) monitor and investigate compliance with the requirements of this title;

(3) provide for the availability of reports as required by section 305;

(4) conduct, or cause to be conducted, the reviews required by section 306;

(5) cooperate with the Attorney General in enforcing the requirements of this title;

Legislative recommendations to Congress and the President.

(6) submit to the Congress and the President recommendations for legislative revision of this title;

(7) perform such other functions as may be assigned by the Judicial Conference of the United States.

Regulation.

(d) The Committee shall, within one hundred and twenty days after the date of enactment of this Act, develop and, with the approval of the Judicial Conference of the United States, promulgate a regulation establishing a method or methods for readily determining, without the necessity for expert appraisal, the fair market value of assets required to be disclosed by this title.

### Failure to file or falsifying reports

Civil action.
28 USC app.

Sec. 304. (a) The Attorney General may bring a civil action in any appropriate United States District Court against any individual who knowingly and willfully falsifies or who knowingly or willfully fails to file or report any information that such individual is required to report pursuant to section 302. The court in which such action is brought may assess against such individual a civil penalty in any amount not to exceed $5,000.

(b) The Committee shall refer to the Attorney General the name of any individual the Committee has reasonable cause to believe has willfully failed to file a report or has willfully falsified or failed to file information required to be reported.

### Additional requirements

28 USC app.

Sec. 307. (a) Nothing in this title shall be construed to prevent the Committee, with the approval of the Judicial Conference of the United States, from requiring officers or employees of the judicial branch not covered by this title to submit confidential financial statements.

(b) The Committee, with the approval of the Judicial Conference, may require disclosure, in the reports filed pursuant to subsections (a) and (c) of section 302, of gifts received by a dependent child of a reporting individual if the information required to be disclosed does not exceed that which must be reported by a spouse of a reporting individual under this title.

(c) Nothing in this Act requiring reporting of information shall be deemed to authorize the receipt of income, gifts, or reimbursements; the holding of assets, liabilities, or positions; or the participation in transactions that are prohibited by law or regulation.

(d) The provisions of this title requiring the reporting of information shall not supersede the requirements of section 7342 of title 5, United States Code.

ly with the Judicial Ethics Committee a personal financial report containing a full statement of assets, income and liabilities, and those of their spouses and dependent children.[4] A second copy of the report must also be filed with the clerk of the court on which the judge sits or serves.[5] Reports on file with the Judicial Ethics Committee and the clerks of court are public documents, available for inspection and

### Custody of and public access to reports

| | |
|---|---|
| 28 USC app. | Sec. 305. (a) The Committee shall make each report filed with it under this title available to the public in accordance with subsection (b) of this section. |
| Inspection or copies of reports.<br><br>Fees. | (b) The Committee shall, within fifteen days after any report is received by the Committee under this title, permit inspection by or furnish a copy of such report to any person requesting such inspection or copy. The Committee may require the requesting person to pay a reasonable fee in any amount which is found necessary to recover the cost of reproduction or mailing of such report excluding any salary of any employee involved in such reproduction or mailing. A copy of such report may be furnished without charge or at a reduced charge if it is determined that waiver or reduction of the fee is in the public interest. |
| Unlawful uses of reports. | (c)(1) It shall be unlawful for any person to obtain or use a report— |

(A) for any unlawful purpose;

(B) for any commercial purpose other than by news and communications media for dissemination to the general public;

(C) for determining or establishing the credit rating of any individual; or

(D) for use, directly or indirectly, in the solicitation of money for any political, charitable, or other purpose.

| | |
|---|---|
| Civil action.<br><br>Penalty. | (2) The Attorney General may bring a civil action against any person who obtains or uses a report for any purpose prohibited in paragraph (1). The court in which such action is brought may assess against such person a penalty in any amount not to exceed $5,000. Such remedy shall be in addition to any other remedy available under statutory or common law. |

(d) Any report received by the Committee shall be held in its custody and be made available to the public for a period of six years after receipt of the report. After such six-year period the report shall be destroyed unless needed in an ongoing investigation, except that in the case of an individual who filed the report pursuant to section 301(b) and was not subsequently confirmed by the Senate, such reports shall be destroyed one year after the individual is no longer under consideration by the Senate unless needed in an ongoing investigation.

### Compliance procedures

| | |
|---|---|
| Reviews.<br>28 USC app. | Sec. 306. (a) The Committee shall establish procedures for the review of reports filed with it under this title to determine whether the reports are filed in a timely manner, are complete, and are in proper form. In the event a determination is made that a report is not so filed, the Committee shall so inform the reporting individual and direct him to take all necessary corrective action. |

(b) Such procedures shall include provisions for conducting a review each year of financial statements filed in that year by judicial officers and employees to determine whether such statements reveal possible violations of applicable conflict of interest laws or regulations and recommending appropriate action to correct any conflict of interest or ethical problems revealed by such review.

---

**4.** *Id.* §§ 301(c); 302; 303(a), (b); 309. **5.** *Id.* § 303(b).

reproduction.[6] The Judicial Ethics Committee was established by the Judicial Conference of the United States under provisions of the Act,[7] is responsible for developing the forms for these reports, and has control over the receipt, custody, and public disclosure of the reports filed with it.[8] The Attorney General of the United States is authorized to bring civil actions against individual federal judges who willfully or negligently violate the financial reporting provisions of the Act. Penalties for willful violations may not exceed $5,000, and penalties for negligent violations may not exceed $1,000.[9]

This action was filed May 14, 1979 in the United States District Court for the Eastern District of Louisiana by six federal district court judges as a class action on their own behalf, and on behalf of all persons similarly situated, to enjoin enforcement of Title III of the Ethics in Government Act. In the original complaint plaintiffs named as sole defendant the United States of America, and alleged that the Act violates the constitutional doctrine of the separation of powers of the three branches of government. Plaintiffs also alleged that imposition of a civil penalty as provided by the Act would diminish a judge's compensation, in violation of Article III of the Constitution. Plaintiffs contended that the Act constitutes an invasion of a judge's right of privacy. Finally, plaintiffs alleged that the Act denies due process of law and equal protection of the laws contrary to the provisions of the Constitution. They alleged that each plaintiff has filed or is willing to file the financial reports, but not for public disclosure. Plaintiffs sought a temporary restraining order against enforcement of the Act in addition to preliminary and permanent injunctive relief.

After a hearing on May 15, the final day set by Congress for compliance with the disclosure provisions of the Act,[10] the district court issued a temporary restraining order enjoining enforcement of the law pending a hearing on plaintiffs' application for a preliminary injunction. On May 24, plaintiffs amended their complaint to name as defendants, in addition to the United States, Griffin B. Bell, individually and in his official capacity of Attorney General of the United States; Judge Edward Allen Tamm, individually and in his official capacity as the chairman of the Judicial Ethics Committee, and the Judicial Ethics Committee.

A hearing on plaintiffs' motion for a preliminary injunction was held on May 25. Plaintiffs' motion to consolidate the hearing on the merits with the hearing for a preliminary injunction was opposed by the United States and denied by the court. Plaintiffs asserted that the district court had subject matter jurisdiction of the case under the provisions of 28 U.S.C. § 1331(a),[11] and argued that the court also had *in personam* jurisdiction over all named defendants pursuant to 28 U.S.C. § 1391(e).[12] Counsel for

---

6. *Id.* §§ 303(b); 305(a), (b).

7. *Id.* § 303(a).

8. *Id.* §§ 303(c), (d); 305(a), (b), (d).

9. *Id.* § 302(f)(6)(C)(i), (ii).

10. *Id.* § 301(c).

11. 28 U.S.C. § 1331(a) provides:
 The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

12. 28 U.S.C. § 1391(e) provides:
 (e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

the United States of America conceded jurisdiction of the court as to the United States of America and Griffin B. Bell, the Attorney General, but made a special appearance on behalf of Judge Tamm and the members of the Judicial Ethics Committee to contest personal jurisdiction over these parties.

During the hearing, counsel for plaintiffs presented their entire case, stating that it was not their intention to offer any additional evidence on a hearing for a permanent injunction.[13] At the conclusion of the hearing, the district court took the case under advisement and extended the temporary restraining order for an additional ten days. Rule 65(b), Fed.R.Civ.P.

On June 4, the district court issued its memorandum opinion denying plaintiffs' motion for a preliminary injunction. The court held that although it had subject matter jurisdiction of the case under 28 U.S.C. § 1331(a), it lacked *in personam* jurisdiction of the Judicial Ethics Committee, Judge Tamm, its chairman, and the clerks of court; therefore, adjudication on the merits as to these parties was precluded. Section 1391(e), which provides for nationwide service of process in "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof" and which was relied upon by plaintiffs to establish personal jurisdiction over Judge Tamm and the Committee, was held to apply only to the executive branch of government, citing *Liberation News Service v. Eastland*, 2 Cir., 1970, 426 F.2d 1379. The court pointed out that under 5 U.S.C. § 701(b)(1)(A), (B), the term "agency" means each authority of the United States but does not include the Congress and the courts of the United States. The court rejected plaintiffs' argument that the Judicial Ethics Committee was performing executive functions in administering the Act and that section 1391(e) was therefore applicable. The court also held that the Louisiana long-arm statute, La.R.S. 13:3201— another means of effectuating extraterritorial service of process—was "inapplicable to these parties on its face." The court found that it had both subject matter and *in personam* jurisdiction over the defendants United States of America and Griffin B. Bell. However, the court held that the provisions of the Act "relegate the responsibilities of the United States, and more specifically, the Attorney General, to a secondary status," [14] and that any relief it could grant plaintiffs against the Attorney General and the United States would therefore be "premature and incomplete." Accordingly, the district court refused to pass upon the merits of the case or the constitutionality of the Act.

The district court did not dismiss the suit but held that it would "defer reaching the merits as to the United States or the Attorney General until it becomes clear which court may exercise jurisdiction over all parties and grant complete relief," and stated it would then transfer the case, pursuant to 28 U.S.C. § 1404(a). However, the court issued an order pursuant to Rule 62(c), Fed. R.Civ.P., against the United States, the Attorney General, the Judicial Ethics Committee, Judge Tamm, and all clerks of court in all United States courts, staying enforcement of the Act "pending appeal of this decision or a final disposition on the merits before a court having *in personam* jurisdiction as to all parties."

Plaintiff judges contend on appeal that the district court erred in holding that it did not have jurisdiction to consider the constitutionality of the Act, and urge this court to grant the injunctive relief sought in the

---

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

13. Tr. vol. 5 at 26.

14. The court noted the Attorney General's responsibilities under the Act are to bring a civil action against those persons who knowingly and willfully or negligently violate the provisions of the Act. Pub.L.No.95–521, § 302(f)(6)(C)(i), (ii).

district court. The government contends that the district court was correct in determining that it lacked personal jurisdiction over Judge Tamm and the Judicial Ethics Committee, and argues that the district court correctly held that it could not grant adequate or complete relief in this case.

We agree with plaintiffs that the district court should properly have addressed the issue of the constitutionality of the Act upon the merits of their motion for a preliminary injunction. However, since, in our view, the Act is constitutional insofar as its provisions pertain to members of the federal judiciary, the district court could not properly have granted injunctive relief to plaintiffs. We therefore affirm the district court's denial of a preliminary injunction, and vacate the court's order staying enforcement of the Act.

## II.

The first question for decision is whether the trial judge and the members of the panel of this court are disqualified from considering the case. Since the suit is a class action on behalf of all federal judges, at least technically all members of the federal judiciary have an interest in the outcome of this litigation sufficient to call into question their impartiality. 28 U.S.C. § 455(a) (Supp. V. 1975).[15]

During the proceedings in the district court, the government requested that the district judge recuse himself because he had not filed a personal financial statement with the Judicial Ethics Committee or his clerk of court, as required by the Act. The

government contended that only those judges who have filed their personal financial statements can properly hear the case. All other judges, the government contended, have a disqualifying interest in the outcome of the suit.[16]

It does not appear that there is any federal judge without an interest in this litigation. Even judges who have filed their personal financial statements as required by the Act have an interest which would arguably be served by declaring the law unconstitutional—for they then would be relieved of the filing and resultant public scrutiny of annual financial disclosure statements.[17] For our part, we note that all members of this panel have filed personal financial statements with the Judicial Ethics Committee and the proper clerk of court.

 In this case, therefore, when all federal judges are arguably disqualified from deciding the matter, the "rule of necessity" comes into operation. "The rule, simply stated, means that a judge is not disqualified to try a case because of his personal interest in the matter at issue if there is no other judge available to hear and decide the case." *Atkins v. United States*, Ct.Cl., 1977, 556 F.2d 1028, *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). If the judges of this court, and the district judge, are disqualified because of their interest in the present controversy, all other judges of the United States courts are similarly disqualified, leaving plaintiffs with no effective forum to decide their constitutional complaints. The law does not tolerate such a hiatus.[18]

---

**15.** 28 U.S.C. § 455(a) provides:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**16.** According to counsel for the United States, all federal judges fall into one of three categories: (1) judges who have not filed a financial disclosure statement; (2) judges who have filed statements that have not been disclosed to the public; and (3) judges who have disclosed their financial statements to the public.

**17.** The Act requires annual disclosure of personal finances. Ethics in Government Act of 1978, Pub.L.No.95–521, 92 Stat. 1824, § 301(c).

**18.** The background and operation of the "rule of necessity" was ably discussed by the Court of Claims in *Atkins v. United States*, Ct.Cl., 1977, 556 F.2d 1028, 1035–40, *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). That opinion makes it clear that Congress did not intend to overrule in its 1974 reenactment of 28 U.S.C. § 455(a) the common law doctrine embodied in the "rule of necessity." We agree with the conclusion of the Court of Claims, and

We hold therefore that the district judge did not err when he held that he need not recuse himself and that he could properly hear this dispute. We also conclude that the members of this court can likewise properly hear and determine the merits of this appeal without recusal. As to this court, the government concedes that we are not disqualified since all members of this panel have filed the personal financial statements as required by the Act.

### III.

■ One of the most difficult problems in this case is the issue of the district court's jurisdiction. It is not disputed that the court has subject matter jurisdiction of the action under 28 U.S.C. § 1331(a).[19] Plaintiffs allege that an act of Congress is unconstitutional, thereby raising a substantial federal question within the subject matter jurisdiction of the federal courts. It is likewise not disputed that the court has jurisdiction as to the United States and Griffin B. Bell, the Attorney General. But the question is whether or not the district court also has *in personam* jurisdiction over Judge Tamm and the Judicial Ethics Committee, and if not, whether the court can still render adequate relief to the parties properly before it.

■ Plaintiffs rely upon 28 U.S.C. § 1391(e) to establish personal jurisdiction over Judge Tamm and the Judicial Ethics Committee. This section of the statute provides that a civil action against an officer or employee of the United States or any agency thereof may be brought in a district where the plaintiff resides, if no real property is involved. The statute further provides for nationwide service of process on the parties by certified mail. By its terms, 28 U.S.C. § 1391(e) is a venue statute, not a personal jurisdiction statute. The government nevertheless concedes that service of process by certified mail upon the persons or entities named in section 1391(e) meets the due process requirements for establishing personal jurisdiction. One circuit has expressly held that section 1391(e) confers both personal jurisdiction and venue. *Liberation News Service v. Eastland*, 2 Cir., 1970, 426 F.2d 1379, 1382. Recently, however, two district courts have concluded that section 1391 confers only venue, not personal jurisdiction. *Weinstein v. Norman M. Morris Corp.*, E.D.Mich., 1977, 432 F.Supp. 337, 339 (construing 28 U.S.C. § 1391(d)); *Kipperman v. McCone*, N.D.Cal., 1976, 422 F.Supp. 860, 871 (construing 28 U.S.C. § 1391(e)).

■ Assuming *arguendo* that 28 U.S.C. § 1391(e) confers both personal jurisdiction and venue, the district court was correct in concluding that the statute does not apply to Judge Tamm and the Judicial Ethics Committee. *Liberation News Service v. Eastland, supra.* In *Eastland*, the Second Circuit considered whether a suit to enjoin ten senators and a Senate committee em-

---

can add little to the discussion adduced there. For Supreme Court cases dealing with the "rule of necessity," see the following cases, each involving a suit by federal judges who claimed that the federal government could not constitutionally require an Article III judge to pay income tax. *Evans v. Gore*, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920); *Miles v. Graham*, 268 U.S. 501, 45 S.Ct. 601, 69 L.Ed. 1067 (1925); *O'Malley v. Woodrough*, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939).

**19.** While all parties concede section 1331(a) confers subject matter jurisdiction in this litigation, plaintiffs also argue that section 1331(a) authorizes suits *eo nomine* against the United States, or in other words, constitutes a waiver of sovereign immunity. Thus, plaintiffs contend the court can issue an injunction under Rule 65, Fed.R.Civ.P., which will bind the United States, its officers, agents, servants, employ-

ees and attorneys, and thereby bind Judge Tamm and the Judicial Ethics Committee regardless of whether they are personally before the court.

While section 1331(a) grants federal courts subject matter jurisdiction over cases and controversies "arising under the Constitution, laws, or treaties of the United States," it does not confer personal jurisdiction over any party to those controversies. The concepts of personal and subject matter jurisdiction are separate and distinct. *Rauch v. Day and Night Mfg. Corp.*, 6 Cir., 1978, 576 F.2d 697. Federal courts must have both subject matter and *in personam* jurisdiction before they may act. "The fact that subject-matter jurisdiction may exist does not excuse the lack of *in personam* jurisdiction." *Dragor Shipping Corp. v. Union Tank Car Co.*, 9 Cir., 1967, 378 F.2d 241, 244.

ployee from issuing subpoenas could be brought in the United States District Court for the Southern District of New York under section 1391(e), although the congressional defendants did not reside there. Judge Friendly, writing for the court, reviewed the legislative history of the section and concluded that it did not apply to the congressional defendants because "in enacting . . . § 1391(e), Congress was thinking solely in terms of the executive branch, to which alone § 1391(e) has thus far been judicially applied." 426 F.2d at 1384. In his opinion Judge Friendly also relied upon the definition of "agency of the United States" contained in 5 U.S.C. § 701 to support the court's conclusion that section 1391 applied only to the executive branch of government since the definition specifically excludes Congress and the judiciary. 426 F.2d at 1384; see 5 U.S.C. § 701(b)(1)(A), (B).

We believe that the reasoning of the Second Circuit in *Eastland* is sound.[20] Section 1391(e)'s reach should not be expanded beyond the executive branch. To do so might bring about absurd consequences. Adoption of plaintiff's theory could result, for example, in an individual federal judge or clerk being liable to defend a lawsuit anywhere a federal court sits.

Plaintiffs argue, however, that Judge Tamm and the Judicial Ethics Committee are, for the purposes of this suit, members of the executive branch of government and therefore within the reach of section 1391(e) because in enforcing the Act they are said to be performing executive functions. Under the provisions of the Act, Judge Tamm and the Committee are to develop reporting forms and promulgate necessary rules and relations, monitor compliance with the Act, make the reports available to the public, cooperate with the Attorney General in enforcing the Act, and perform such other functions as may be

assigned by the Judicial Conference of the United States.[21] Plaintiffs contend that such functions can hardly be termed judicial. However, the duties now performed under the Act by the Judicial Ethics Committee and its chairman, Judge Tamm, are similar to those performed for the past ten years by the Review Committee of the Judicial Conference of the United States and its chairman, Judge Tamm. Then, as now, Judge Tamm and the Committee collect financial reports from federal judges, review them, and disclose them to the public. While the reports required by the Act are considerably more detailed than those previously required by the Judicial Conference, and the Committee must now report the names of judges who have not complied to the Attorney General instead of the Judicial Conference, the nature of the duties performed is closely related. No one contends that committees created by the Judicial Conference are not part of the federal judiciary. The district court was clearly correct, therefore, in holding that Judge Tamm and the Judicial Ethics Committee perform "a judicial administrative function." Since Judge Tamm and the Committee remain part of the judicial branch of government, the provisions of 28 U.S.C. § 1391(e) cannot be used to establish personal jurisdiction over them.

[7] Plaintiff judges next contend that the Louisiana long-arm statute, La.R.S. 13:3201, may be used to establish personal jurisdiction over Judge Tamm and the Judicial Ethics Committee. This statute which permits a Louisiana state court to exercise personal jurisdiction over a nonresident who transacts business or "engages in any other persistent course of conduct" within the state and which may be invoked by a federal district court pursuant to Rule 4(e), Fed. R.Civ.P., was held by the district court to be "inapplicable to these parties on its face."

---

20. In a situation analogous to the Second Circuit's interpretation of section 1391(e), the Fifth Circuit has held that a federal judge "is not an employee of the United States" within the meaning of the Federal Tort Claims Act, which on its face applies to "any employee of

the Government." 28 U.S.C. § 1346(b). *Cromelin v. United States,* 5 Cir., 177 F.2d 275, 277, *cert. denied,* 339 U.S. 944, 70 S.Ct. 790, 94 L.Ed. 1359 (1950).

21. 28 U.S.C.App. § 303.

It should be obvious that Judge Tamm and the Judicial Ethics Committee have not transacted any business in Louisiana, nor do they regularly engage in any other persistent course of conduct within the state. The district court correctly concluded that their duties under the Act do not amount to such contact with Louisiana as to invoke that state's long-arm jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Thus the district court was correct in concluding that it lacked personal jurisdiction over Judge Tamm and the Judicial Ethics Committee but that two defendants were properly before it, the United States and the Attorney General. The court erred, however, when it held that it could not pass upon the merits of plaintiffs' motion for a preliminary injunction and decide the constitutional question presented.

■ Judge Tamm and the Judicial Ethics Committee are not indispensable parties requiring dismissal of this suit under Rule 19, Fed.R.Civ.P. *See English v. Seaboard Coast Line R.R. Co.,* 5 Cir., 1972, 465 F.2d 43; *Haas v. Jefferson National Bank of Miami Beach,* 5 Cir., 1971, 442 F.2d 394. A judgment rendered in the absence of Judge Tamm and the Committee will not be prejudicial to their interests,[22] and this court can render adequate relief to the parties before it.

The government argues that a judgment against the United States and the Attorney General will be inadequate as the Attorney General plays a secondary role in the enforcement of the Act since he merely brings suit for civil penalties against judges who fail to comply with the Act. The Judicial Ethics Committee and its chairman, Judge Tamm, the government argues, are charged with the primary responsibilities of developing the reporting forms, collecting the reports and disclosing them to the public.

■ The government's argument runs into difficulty when the question is not the enforcement but the constitutionality of the Act. A single Act of Congress creates the duties of the Attorney General, the Judicial Ethics Committee, and Judge Tamm. The Act is not divisible—it cannot be constitutional for one of these parties to enforce the Act's financial reporting provisions if another cannot, and vice versa. This court may properly consider the constitutionality of the roles assigned to the Attorney General and the United States by the Act, and either validate or invalidate the Act. Therefore, since plaintiffs seek a ruling as to the constitutionality of the Act, and the United States and the Attorney General, parties charged with responsibilities under the Act, are before the court, the court can render adequate relief.[23]

Throughout this litigation, the government continues to urge that this action was "filed in the wrong court." Brief for Appellees at 11. The proper venue for this action, the government contends, lies in Washington, D. C., where personal jurisdiction may be obtained over Judge Tamm and the Committee. There are several problems with this contention.

■ The first difficulty is the factual reality that a District of Columbia court, like the court below, may be unable to obtain jurisdiction over the Judicial Ethics Committee. It is not clear that the Committee "resides" in Washington, D. C. merely because its chairman resides there. The Act which creates the Judicial Ethics Com-

---

**22.** Since this case is not a suit for money damages but is a suit to have an Act of Congress declared unconstitutional and its enforcement enjoined, a judgment in this matter will not be prejudicial to the Judicial Ethics Committee or its chairman. Even assuming, *arguendo,* that this court declared the Act unconstitutional, Judge Tamm and the Committee would not be prejudiced—they would simply be relieved of the duties imposed on them by the Act.

**23.** Plaintiffs have standing to sue the Attorney General as they have intentionally failed to file the disclosure statement required by the Act, and were it not for the stay issued by the district court, the Attorney General would be obligated to bring suit against plaintiffs for noncompliance with the Act. Pub.L.No.95–921, 92 Stat. 1824, § 302(f)(6)(C)(i).

mittee fails to give the Committee a specific situs. If, as is possible, jurisdiction over the Committee can be obtained only by asserting *in personam* jurisdiction over each individual member, then a Washington, D. C. court, like the New Orleans court below, would be unable to obtain such jurisdiction, for the members of the Committee are resident in a number of different states.[24] *See generally* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1861.

A difficulty similar to that of obtaining jurisdiction over the Judicial Ethics Committee, but greatly magnified, lies in obtaining jurisdiction over the clerks of court of all United States courts in the nation. The government contends that only a court with *in personam* jurisdiction over Judge Tamm, the Judicial Ethics Committee, and the clerks of all federal courts can render adequate relief in this case. Brief for Appellees at 32. The government agrees, however that there is no single federal court anywhere in the United States where such jurisdiction can be obtained. *Id.* n. 17.

▮ Plaintiffs' prayer for relief in their original and amended complaints states the main object of the suit: "That this Court declare that Acts 1978, P.L. 95–521, passed by the U. S. Congress October 26, 1978, insofar as the said Act relates to U. S. Judges, violates the U. S. Constitution . . . ." Though the district court did not have jurisdiction to enter an *in personam* injunction against Judge Tamm and the Judicial Ethics Committee, it did have jurisdiction to test the constitutionality of the Act in the suit against the United States and the Attorney General. Because of the great public importance of the Ethics in Government Act of 1978, and in the interest of judicial economy, this court will now pass upon the merits of plaintiffs' motion for a preliminary injunction against enforcement of the Act, based on the asserted unconstitutionality of the Act's pertinent provisions.

## IV.

It is unnecessary that we examine all of the requirements for the issuance of a preliminary injunction, *see Henry v. First National Bank of Clarksdale,* 5 Cir., 1979, 595 F.2d 291, 302, because in our opinion the Ethics in Government Act of 1978 is constitutional as applied to members of the federal judiciary, and there is no likelihood that plaintiffs can prevail on the merits of their case. Injunctive relief, therefore, was properly denied by the district court.

Plaintiffs allege numerous constitutional infirmities in the Act. First, they contend that the Act violates the constitutional principle of separation of powers. Next, they argue that the imposition of civil penalties for violation of the Act diminishes a judge's compensation, contrary to Article III of the Constitution.[25] Third, plaintiffs contend that the Act constitutes a violation of their fundamental constitutional right of privacy. Finally, they aver that the Act violates the constitutional provisions of equal protection and substantive due process.

### A. Separation of Powers

Plaintiffs contend that the requirement that personal financial reports be filed by judges for public disclosure under the Act intrudes upon the independent, decisional freedom of United States judges and thereby violates the constitutional principle of separation of powers. They further argue that the Act unconstitutionally interferes with judicial independence by subjecting federal judges to familial disquiet, political pressure, and increased threats of physical or economic harm at the hands of criminals and disgruntled litigants.

---

**24.** Members of the Judicial Ethics Committee reside in six different states and the District of Columbia. They are: Judges Edward A. Tamm, chairman, Washington, D. C.; Bernard M. Decker, Illinois; Edward T. Gignoux, Maine; Frank M. Johnson, Jr., Alabama; William Wayne Justice, Texas; Alfred A. Arraj, Colorado; A. Sherman Christensen, Utah.

**25.** Article III, section 1 of the Constitution provides that "Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."

Plaintiffs' objections to the reporting provisions required by the Act have substantial merit and are deserving of the most careful consideration. The presence of armed guards and sophisticated electronic weapons detection equipment in United States courthouses is mute testimony to the personal danger with which federal judges are confronted. It likewise takes no vivid stretch of the imagination to believe that widespread public knowledge of their personal finances may subject federal judges to possible pressure or importuning by family members, public and political interest groups, and others. Some of these dangers confront federal judges even today regardless of the impact of the Act.[26]

■■ Of course, the separation of powers doctrine does not require "three airtight departments of government." *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977). Rather, the doctrine operates to prohibit one branch of government from unduly impeding the operation of a coordinate branch of government. As stated by the Supreme Court, "in determining whether the Act [of Congress] disrupts the proper balance between the coordinate branches,

the proper inquiry focuses on the extent to which it prevents the [affected branch] from accomplishing its constitutionally assigned functions. . . . Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." 433 U.S. at 443, 97 S.Ct. at 2790.[27]

Plaintiffs have presented evidence that the Act will prevent the judiciary from accomplishing its constitutionally assigned functions. In their briefs to this court and the district court, and at the hearing on the preliminary injunction, plaintiffs have set forth in detail the evidence upon which they base their fears, and their proof is entitled to great weight.[28] Plaintiffs contend they presented at the hearing below sufficient proof to establish the possible harm wrought by the Act, but state that ultimately what is before the court is really a question of law.[29] Accepting as correct plaintiffs' assertions about the consequences of the Act, we must then decide whether they constitute an interference with the powers of the judiciary imposed by Congress sufficient to invalidate the Act for unconstitutionality.

**26.** Because the residence, telephone number, and salary of federal judges are generally matters of public record, members of the judiciary are already exposed to significant risks both personal and financial.

**27.** In *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), the Supreme Court held that the Presidential Recordings and Materials Preservation Act, 44 U.S.C. §§ 2107 *et seq.,* which preserves various Presidential papers and recordings for governmental and public use contrary to the wishes of former President Richard M. Nixon, does not violate the doctrine of the separation of powers. The Court in *Nixon* did not reach the issue of whether the alleged encroachment upon the executive branch was justified by legitimate congressional objectives, however, because the Court concluded that the executive branch retained full control of the Presidential papers affected by the Act. 433 U.S. at 443, 97 S.Ct. at 2790. There was, therefore, no disruption of executive functions significant enough to trigger separation of powers analysis.

**28.** Typical of plaintiffs' assertions are the statements that a judge "and his family are subject to a greater danger from criminals than the

average citizen," and "disclosure of one's financial affairs will make it easier for those who wish to do him physical or economic harm." Brief for Appellants at 32–33. Risks imposed by the Act include, in the judges' view, the "likelihood that someone who wishes to harm [a judge] will burn or otherwise destroy [his] property," as well as the "likelihood that he or a member of his family will be kidnapped and held for ransom." *Id.* at 33. Furthermore, the judges claim that "it cannot be assumed that Congressmen and members of the Executive Branch would not use the financial reporting law as a method of putting pressure on judges to control their decisions." *Id.* at 35. Specifically, the judges note the possible "misuse of the I.R.S." *Id.*

**29.** Counsel for plaintiffs stated at the hearing below that "[t]his is not a fact case. We can establish the facts in this case in the matter of an hour or so, but this is a question of law, the interpretation of this Act, whether this Act as enacted by the Congress and applied by the Judicial Ethics Committee is unconstitutional . . . .." Tr. vol. 5 at 26.

Though it is apparent that compliance with the Act's financial disclosure provisions may increase certain risks and dangers to federal judges, and to that extent might intrude upon the constitutionally assigned function of the judiciary, it is necessary to determine "whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress." *Nixon v. Administrator of General Services, supra,* 433 U.S. at 443, 97 S.Ct. at 2790.

■ In the legislative history the congressional purpose is explained in some detail as to the values served by the Act's financial disclosure requirements. Congress sought by the Act to increase public confidence in all three branches of the federal government, demonstrate the high level of integrity of the vast majority of government officials, deter conflicts of interest from arising, deter some persons who should not be entering public service from doing so, and better enable the public to judge the performance of public officials.[30] Though plaintiffs argue that such legislative ends are impermissible when applied to the judiciary since federal judges are not elected officials, none can doubt that federal judges are important governmental officers in whom the public at large has a substantial interest. The decisions of the federal judiciary today frequently have dramatic impact upon the lives of every citizen of this country. Thus we are not prepared to conclude that Congress' determination that personal financial disclosure by federal judges will serve such "substantial federal interests" as restoring public confidence and deterring conflicts of interest is constitutionally impermissible. *Nixon v. Administrator of General Services,* 433 U.S. at 453, 97 S.Ct. at 2795. Indeed, Congress is manifestly empowered to declare that a judge be disqualified "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). If Congress has the constitutional authority to require a judge to disqualify himself from adjudicating certain issues on the ground of financial interest, 28 U.S.C. § 455(b)(4), mandating a judge to disclose his personal financial interests is *a fortiori* an objective within the constitutional authority of Congress.

The intrusion upon the constitutionally assigned functions of the judiciary made by the Act is justified by the promotion of important objectives within the constitutional authority of Congress. The Act, therefore, does not violate the doctrine of separation of powers.

---

**30.** A Senate report prior to the passage of the Act sets forth the congressional objectives sought to be achieved by public financial disclosure:

(1) Public financial disclosure will increase public confidence in the government. Numerous national polls of voter confidence in officials of the Federal government, and the low turnout of voters in recent elections, were cited for the proposition that public confidence in all three branches of the Federal government has been seriously eroded by the exposure, principally in the course of the Watergate investigation, of corruption on the part of a few high-level government officials. Public financial disclosure was seen as an important step to take to help restore public confidence in the integrity of top government officials, and, therefore, in the government as a whole.

(2) Public financial disclosure will demonstrate the high level of integrity of the vast majority of government officials. Only a very small fraction of a percent of all government officials have ever been charged with professional impropriety.

(3) Public financial disclosure will deter conflicts of interest from arising. Disclosure will not tell an official what to do about outside interests; it will ensure that what he does will be subject to public scrutiny.

(4) Public financial disclosure will deter some persons who should not be entering public service from doing so.

Individuals whose personal finances would not bear up to public scrutiny, whether due to questionable sources of income or a lack of morality in business practices, will very likely be discouraged from entering public office altogether, knowing in advance that their sources of income and financial holdings will be available for public review.

(5) Public financial disclosure will better enable the public to judge the performance of public officials. By having access to financial disclosure statement, an interested citizen can evaluate the official's performance of his public duties in light of the official's outside financial interests.

S.Rep. No. 95–170, 95th Cong., 2d Sess. 21–22 (1977), U.S.Code Cong. & Admin.News 1978, pp. 4237–4238.

## B. Diminution of Compensation

Plaintiffs argue that the penalties which may be assessed against a judge for noncompliance with the financial disclosure provisions of the Act diminish the compensation of federal judges in violation of Article III of the Constitution.[31]

Courts have established a clear test for determining when the compensation clause of Article III has been violated. In *Atkins v. United States*, Ct.Cl., 1977, 556 F.2d 1028, *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978), federal judges sued the government to recover money allegedly due them because their salaries had been "diminished" by inflation. In dismissing the complaint, the court held that

> Indirect, nondiscriminatory diminishments of judicial compensation, those which do not amount to an assault upon the independence of the third branch or any of its members, fall outside the protection of the Compensation Clause . . . .

*Id.* at 1045.

As in *Atkins*, there is here no direct, discriminatory assault on judicial independence, no "plan fashioned by the political branches . . . ineluctably operating to punish the judges *qua* judges . . . ." *Id.* at 1054. Indeed, Congress imposed precisely the same penalty for failure to file financial reports on members of Congress, 2 U.S.C. § 106, and on members of the executive branch, 5 U.S.C. App. § 204(a). The court in *Atkins* observed:

> If Congress intended to mount an attack on the independence of the judiciary . . ., why would it have included . . . the top level civil servants and even . . . its own Members? . . [T]he fact that judges are not alone in that class substantially weakens plaintiffs' allegations of discrimination.

*Id.* at 1055.

Although it is true that the civil penalty provisions of the Act may reduce a judge's disposable income, that penalty cannot be fairly described as a diminution of compensation.

## C. Invasion of Privacy

Plaintiffs contend that their personal privacy and that of their spouses and dependents is unconstitutionally invaded by the reporting requirements of the Act. They contend that personal financial disclosure will provoke threats of physical and economic harm such as murder, kidnapping, and destruction of property, as well as the irritation of solicitations or the embarrassment of poverty. Additionally, disclosure could be destructive of close family relationships. Brief for appellants at 41.

No one doubts that privacy is an important personal interest, especially cherished in these days of electronic surveillance and computerized data banks. The question is whether personal financial disclosure required by the Act impermissibly intrudes into the sphere of family life constitutionally protected by the right of privacy. *See Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

In *Plante v. Gonzalez*, 5 Cir., 1978, 575 F.2d 1119, this court held that Florida's "Sunshine Amendment," which required extensive financial disclosure by all elected state officials, including judges, did not illegally interfere with familial privacy. While plaintiff judges contest *Plante's* applicability, we are convinced that *Plante's* reasoning controls the situation at hand.[32] In *Plante*, as here, plaintiffs contended that financial disclosure was a matter of "great family concern," and could bring "mischief, even kidnappers or other criminal attention to an office holder." 575 F.2d at 1128. The Court concluded, however, that "[f]inancial privacy is not within the autonomy branch of the right to privacy." *Id.* at 1132. The court's analysis supporting its conclusion is instructive:

---

31. *See* 28 U.S.C.App. § 305(c)(2).

32. Since the Florida law involved in *Plante* applies to elected officials, and the Act currently under consideration applies to appointed federal judges, plaintiffs contend that the *Plante* decision is therefore inapposite.

What impact will financial disclosure have upon the way intimate family and personal decisions are made? Will it affect the decision whether to marry? Will it determine when or if children are born? There is no doubt that financial disclosure may affect a family, but the same can be said of any government action. While disclosure may have some influence on intimate decision-making, we conclude that any influence does not rise to the level of a constitutional problem.

*Id.* at 1131.

Plaintiffs' contention that personal financial disclosure unconstitutionally interferes with their rights of confidentiality is a more difficult problem. In *Plante,* this court joined the "majority of courts" in concluding that "mandatory financial disclosure for elected officials is constitutional." 575 F.2d at 1136 & n. 26. This case, unlike *Plante,* deals with appointed federal judges, not elected officials. Furthermore, federal judges under Article III of the Constitution hold a status apart from other public officials. Notably, federal judges are appointed for life and are thereby insulated from the political process so as to insure judicial independence. The inquiry thus becomes whether fundamental differences between elected officials and members of the federal judiciary mandate an analysis or outcome divergent from *Plante.* We conclude they do not.

In *Plante,* this court rejected "strict scrutiny" analysis in cases involving the confidentiality strand of the right of privacy. A balancing test, which weighs the injuries imposed by a legislative act against the governmental interests furthered by the act, was determined to be more appropriate in such cases. 575 F.2d at 1134. Our task therefore is to determine whether the legitimate governmental interests furthered by the Act outweigh its incidental intrusion upon plaintiffs' privacy.

■ As noted earlier, Congress has set forth a rather extensive list of values served by the financial disclosure provisions of the Act.[33] Such values include increasing the public's confidence in the government and deterring conflicts of interest. These are important governmental interests which are substantially furthered by financial disclosure. *Plante v. Gonzalez, supra,* 575 F.2d at 1134–37; *Buckley v. Valeo,* 424 U.S. 1, 66–68, 96 S.Ct. 612, 46 L.Ed.2d 659 (1978).[34]

Regardless of the important governmental interests furthered by the Act, plaintiff judges argue that since they are appointed, rather than elected officials, public disclosure of their finances is an unwarranted invasion of their privacy.

The fact that federal judges are appointed, rather than elected, does not significantly decrease the public's interest in their personal finances. Like the state senators in *Plante,* judges are "not ordinary citizens" but are rather people "who have chosen" to accept public office. 575 F.2d at 1135. Though not chosen by the public, they themselves have elected to assume public responsibility. That fact, in itself "puts some limits on the privacy that they may reasonably expect." *Id.* Regardless of whether a public official is elected or appointed to office, his or her legitimate expectation of privacy is necessarily circumscribed.[35] As the First Circuit recognized in

> Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.
>
> *Buckley,* 424 U.S. at 67, 96 S.Ct. at 658, *quoting* L. Brandeis, *Other People's Money and How the Bankers Use It,* 62 (National Home Library Foundation ed. 1933).

**33.** *See* note 30, *supra.*

**34.** In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court held that the financial disclosure provisions of the Federal Election Campaign Act pass constitutional muster. The Supreme Court in *Buckley* recognized that public disclosure of finances can be a potent tool in establishing public confidence and avoiding governmental impropriety. In reaching its conclusion the Court quoted Mr. Justice Brandeis' oft-repeated statement that:

**35.** The Supreme Court has noted that "appointed officials" fall into the class of "public figures" who are afforded only minimal legal protection in shielding themselves from what they

a case involving nonelective officers, "[p]rivacy in the sense of freedom to withhold personal financial information from the government or the public has received little constitutional protection." *O'Brien v. DiGrazia*, 1 Cir., 1976, 544 F.2d 543, 545–46, *cert. denied sub nom. O'Brien v. Jordan*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). The Wisconsin Supreme Court, in dealing with a judicial code of ethics requiring financial disclosure by judges, stated:

> There are compelling public interests behind the adoption [of the disclosure rules]. The first is to assure the impartiality and honesty of the state judiciary. The second is to instill confidence in the public in the integrity and neutrality of their judges. The third is to inform the public of economic interests of the judges which might present a conflict of interest. Taken together, these paramount public interests are enough to subordinate the assumed right of a public official to be free from compulsory economic disclosure.

*In re Kading*, 70 Wis.2d 508, 235 N.W.2d 409, 417–18 (1975). Congress, in passing the Act, sought to further many of the same interests noted by the Wisconsin court. The fact that federal judges are appointed rather than elected does not put those interests beyond the constitutional pale.

The judges' contention that there already exist sufficient means to achieve the governmental interests served by financial disclosure is likewise insufficient to invalidate the Act. While nomination and confirmation procedures no doubt weed out certain persons who should not serve as federal judges, they do nothing to scrutinize the behavior of judges once confirmed. Congress could legitimately conclude that the statutory controls mandated by the Act would further the interests of judicial integrity.

By alerting litigants and the public of a judge's financial interests, the financial disclosure provisions of the Act can serve as a check on potential judicial abuse. In part, the Act is a means of effectuating 28 U.S.C. § 455(b)(4), which requires a judge to disqualify himself in matters in which he has a financial interest. Although one can logically argue, as plaintiff judges do, that Congress went further than is necessary in dealing with the evils sought to be avoided or eradicated by the Act, this court cannot invalidate an act of Congress merely because we disagree with the legislative prudence of the statute.[36]

### D. Equal Protection and Due Process

Plaintiffs' final contentions are that the Act denies federal judges equal protection and due process of law.

The judges argue that the Act violates equal protection principles applicable to the federal government through the Fifth Amendment in that it imposes duties on judges which are not imposed on other citizens and imposes stricter duties on judges than on other federal officials regulated by the Act.[37] The Act regulates high

may regard as the unwelcome effects of public discussion about matters which a private individual may view as outside the sphere of that discussion. *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966); *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**36.** The Supreme Court has dismissed for want of a substantial federal question an appeal challenging the constitutionality of a financial disclosure law applicable to both appointed and elected officials. *Montgomery County v. Walsh*, 274 Md. 502, 336 A.2d 97 (1975), appeal dismissed, 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976). The privacy issue was discussed extensively in the state court opinion, and was the first issue framed for appeal in the Supreme Court. 44 U.S.L.W. 3109 (1975). The dismissal by the Supreme Court cautions us to some extent against finding the Act unconstitutional, *Plante v. Gonzalez, supra*, 575 F.2d at 1126–27, and when considered with the factors discussed above convinces us that the Act does not unconstitutionally hamper plaintiffs' privacy interests.

**37.** Since plaintiffs' equal protection claims do not involve invidious discrimination, suspect classifications, or fundamental rights, strict scrutiny is inapplicable. *See Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). We need only inquire whether there is a rational basis for the congressional classifications at issue.

level federal officials in all three branches of government. Plaintiffs argue that because the Act thus separates these officials from the public at large, it violates equal protection. But since the purpose of the Act is to promote public confidence in the federal government, there is a rational basis for requiring financial disclosure only from the federal officials specified by the Act, and not from the public at large. Similarly, the requirement imposed on judges of filing a report in two locations is rationally related to the legitimate purposes of the Act. Congress may require that the judges' financial reports be located both in the place where litigants can readily gain access to them and also in a place where the Judicial Ethics Committee exercises its functions.

 Plaintiffs finally contend that the Act is irrational and arbitrary, and therefore violates the due process clause of the Fifth Amendment. This argument must likewise fail since the Act substantially furthers several important governmental interests.[38]

### V.

The judges have good reason to believe that, as to them, the financial disclosure provisions of the Act are unnecessary, that

a remedy is being provided by Congress where none is needed. Incidents of judicial misconduct or impropriety in the federal judiciary are extremely rare. Judges should not be harassed in the legitimate exercise of their duties, and we should tread softly before imposing publicity on their private financial affairs which may be a serious threat to judicial independence and may erode that independence so necessary to the proper functioning of the judiciary. Federal judges may properly inquire what necessity brought about the provisions of the Act of Congress which will cause many of their intimate personal and confidential financial affairs to be open to public inspection. It is not a complete answer to point out that the Act is applicable to officials not only in the judiciary but also in the executive and legislative branches of the government, and judges should therefore have no special exemption from the Act's provisions. Clearly, the financial disclosure requirements are strong medicine and are not entirely palatable to the members of the federal judiciary. Thus, we must test the constitutionality of the Act by inquiring whether it substantially furthers important governmental interests. In doing so, we employ the time-honored balancing approach.[39]

---

**38.** See text accompanying notes 33–34, *supra.*

**39.** Balancing the rights of the judiciary against the governmental interests furthered by the Act is a difficult and to some extent an inexact task. In holding that, in this instance, Congress has not overstepped the boundaries of constitutionality in passing the Ethics in Government Act, we do not wish to demean the weighty arguments advanced by the plaintiffs. We are reminded of Mr. Justice Holmes' statement in *Hudson Water Co. v. McCarter,* 209 U.S. 349, 355, 28 S.Ct. 529, 52 L.Ed. 828 (1908), recently quoted with approval by Mr. Justice Rehnquist in *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 390, 58 L.Ed.2d 292 (1978):

All rights tend to declare themselves absolute to their logical extreme. Yet all in fact are limited by the neighborhood of principles of policy which are other than those on which the particular right is founded, and which become strong enough to hold their own when a certain point is reached. . . . The boundary at which the conflicting interests balance cannot be determined by any

general formula in advance, but points in the line, or helping to establish it, are fixed by decisions that this or that concrete case falls on the nearer or farther side."

For cases utilizing a balancing test approach similar to the one employed by this court today in a variety of factual circumstances, *see, e. g., Bell v. Wolfish,* —— U.S. ——, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *E. I. du Pont de Nemours & Co. v. Train,* 430 U.S. 112, 97 S.Ct. 965, 51 L.Ed.2d 204 (1977); *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Paris Adult Theatre v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Scales v. United States,* 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); *Konigsberg v. State Bar,* 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); *Barenblatt v. United States,* 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959).

It is evident that there is a growing public demand for accountability and integrity of public officials and the Act is designed to carry out that purpose. There are only about 850 federal judges, but it is clear that they occupy an expanding role in today's society. In the appropriate weighing of the competing interests, it is significant that 23 states have enacted similar laws, and financial disclosure for judges in those states is now routine.[40] In balancing judicial accountability with judicial independence, we are unable to hold that the Act's objectives so clearly intrude upon the judicial functions that they are unconstitutional. Balancing conflicting interests is therefore not an abdication of our authority but is a resort to a widely accepted judicial process of reasoning. If the Act's provisions serve the purpose of maintaining the public's confidence in the federal judiciary, they will have served us well, despite the fact that we know such requirements undoubtedly chip away at judicial independence. Judges have a right to be concerned with any diminution of their freedom to act.

We might well remember the admonition of the distinguished Chief Judge of the Second Circuit, Irving R. Kaufman, who pointed out in his recent *Yale Law Journal* article, *Chilling Judicial Independence*,[41] that "[i]f there is any lesson to be drawn from the political turmoil of recent years, it is the indispensable need for a judiciary able to serve, in the words of Edmund Burke, as a 'safe asylum' during times of crisis."

The decision of the district court denying a preliminary injunction is affirmed but on the grounds specified in this opinion, and the district court's stay pending the appeal of this case is hereby vacated.

AFFIRMED AND MODIFIED; STAY PENDING APPEAL VACATED.

---

**40.** Thirty-four states have financial disclosure requirements for public officials. *See:* Ala. Code, tit. 36, §§ 25–14, 36–25–11 (1975); Alaska Stat. § 39.50.010 et seq.; Ariz.Rev.Stat. § 38–541–545; Ark.Stat.Ann. § 12–3001; Cal. Gov't Code §§ 87200, 87300; Colo.Rev.Stat. § 1–45–101(2); Conn.Gen.Stat. §§ 1–83, 51–46a; Fla.Const., Art. II, § 8; Hawaii Rev.Stat. § 841–7; Ill.Pub. Acts 78–1183, Art. IX, Ch. 46; Ind. Code §§ 4–2–6–8, 33–2.1–8–1; Iowa Code, § 68B.10; Ky.Rev.Stat. § 61.780; Me.Rev.Stat. tit. 1, Ch. 25; Md. Code Ann., Art. 33, § 29–1–29–11; Mass.Gen. Laws, Ch. 268B; Minn.Stat. § 10A.09; Neb.Rev.Stat., Art. 14, § 49–1493; N.M.Stat.Ann. §§ 15–2–1 through 15–2–15; N.D.Cent. Code § 16–22–02; N.J. Executive Order No. 15 (1975); N.Y. Executive Order No. 10.1 (9 NYCRR 3.10), Ohio Rev. Code § 102.02; Oregon Rev.Stat. § 244.050; 1978 Pa.Laws 170, § 2; S.C. Code § 8–13–10; S.D. Comp. Laws Ann. § 12–25–27; Tenn.Code Ann. § 8–4125; Texas Elec. Code Ann., Ch. 14; Utah Code Ann. § 67–16–6; Va. Code §§ 2.1–353.2, 2.1–358; Wash.Rev. Code § 42.17.010 et seq.; W. Va. Code §§ 3–8–6 to 3–8–7; Wis.Stat. §§ 19.-41–19.58.

Twenty-three of these state statutes apply to judges. The states are:

Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Illinois, Indiana, Kentucky, Massachusetts, New Mexico, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, Washington, West Virginia, Wisconsin. For precise citations to the statutes of these states which require financial disclosure for judges, *see* previous paragraph.

Brief in district court of Common Cause pp. 2–3.

**41.** 88 Yale L.J. 681 (1979).