The Honorable Larry Mitchell State Representative P.O. Box 81 Bryant, AR 72022-0081
Dear Representative Mitchell:
This is in response to your request for an opinion on the following question:
 Is it unconstitutional for members of a school board to be forced to file a financial disclosure statement and the statement be maintained as a public record?
It is my opinion that the answer to this question is, generally, "no." The constitutionality of mandatory financial disclosure for elected officials has been upheld by a majority of courts. SeePlante v. Gonzalez, 575 F.2d 1119 (5th Cir. 1978) at 1136 and n. 26, cert. denied, 439 U.S. 1129 (1979); Duplantier v.United States, 606 F.2d 654 (5th Cir. 1979) at 670, cert. denied449 U.S. 1076 (1981). Challenges under the First (free speech and association), Fourth (unreasonable searches and seizures), and Fifth (right against compelled self-incrimination) Amendments to the U.S. Constitution have generally failed. See Slevin v.City of New York, 551 F.Supp. 917 (S.D.N.Y. 1982), aff'd. in part, rev'd. in part sub nom, Barry v. City of New York,712 F.2d 1554 (2nd Cir. 1983). Challenges under theFourteenth Amendment, based upon an alleged invasion of privacy, have also been rejected. See Slevin, supra at 920 and n. 3. (". . . while virtually every court that has considered financial disclosure laws has stated that the Constitution shields individual and family privacy as to financial matters, few courts have placed constitutional limits of any sort on legislatures requiring financial disclosures and providing that they be available to the public.")[1]
With regard to the privacy analysis, a pro-disclosure balance has been reached, following intermediate scrutiny or a balancing approach. See Slevin and Barry, supra. The governmental interest in revealing and deterring corruption and conflicts of interest has generally been held to outweigh the possible infringement of the individual's privacy interests. SeePlante and Duplantier, supra. The balancing approach was applied in connection with community school board members in the case of Kaplan v. Bd. of Educ. of City Sch. Dist., supra. The court rejected the argument that the school board members' powers and duties do not give rise to sufficient opportunities for corruption to justify the financial disclosure requirements in question. 759 F.2d at 262.[2] The court read the statutory requirements as reflecting ". . . the legislature's view that community school board members do possess significant powers which could make them possible targets of corruption. . . ."Id. It then concluded:
 While board members do not possess unfettered discretion in a wide variety of areas, they can employ a superintendent, appoint and discharge all employees of the local board, manage and operate the schools under their jurisdiction, and authorize repairs to school buildings up to $250,000 — all without first obtaining the approval of the Central Board. Local board members also exert considerable influence over matters such as the curriculum and the operation of cafeterias and social centers. Despite appellants' claims to the contrary, we believe that these powers give rise to sufficient opportunities for corruption so that financial disclosure by community school board members is substantially related to the goal of deterring such corruption.
Id. A similar analysis would, in my opinion, apply in the case of local school boards in Arkansas.
A conclusive determination with regard to particular financial disclosure requirements would, of course, require consideration of the specific law(s) involved. With respect to Act 326 of 1991 (codified at A.C.A. § 21-8-305—309 (Cum. Supp. 1991)), which was referenced in your question, it is my opinion that this act would withstand constitutional scrutiny. As noted above (see n. 1), judicially mandated procedures allowing privacy claims have been incorporated into various financial disclosure laws in the state of New York. My research indicates, however, that there is no judicial consensus, outside the 2nd Circuit, that such a mechanism is constitutionally required. The disclosure requirements under Act 326 are, moreover, readily distinguished from the broad reporting provisions at issue in the New York cases. See Watkins, Barry, and Kaplan, supra. The presumption in favor of the constitutionality of all legislative enactments (see generally Owen v. Dalton, 296 Ark. 351,757 S.W.2d 921 (1988)) would, in my opinion, prevail in this instance.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The New York State Court of Appeals, in the case of Hunterv. City of New York, 405 N.Y.S.2d 455, 376 N.E.2d 928 (1978), mandated a mechanism to prevent automatic public disclosure of all reported information. This so-called "privacy mechanism" has been incorporated into local and state financial disclosure requirements in New York. See Watkins v. New York State EthicsCommission, 554 N.Y.S.2d 955 (1990) (regarding state Ethics in Government Act (L. 1987, Ch. 813); Kaplan v. Bd. of Educ. ofCity Sch. Dist., 759 F.2d 256 (2nd Cir. 1985) (New York Education Law § 2590-g); Barry v. City of New York, supra
(Local Law 1, New York City Admin. Code § 1106-5.0). The New York Supreme Court has stated that some exemption and deletion procedure is necessary ". . . to vindicate the privacy rights of government employees subject to financial disclosure statutes," (Grygas v. New York State Ethics Comm., 554 N.Y.S.2d 779
(1990)), and that "[w]ithout such safety valves for privacy interests, such statutes might well be unconstitutional. . . ."Id. It should be noted, however, that New York appears to be in the minority in requiring such a mechanism. As noted by the U.S. Court of Appeals for the 2nd Circuit in Barry v. City of NewYork, supra, ". . . courts have upheld financial disclosure laws that . . . do not have any similarly broad privacy mechanism." 712 F.2d at 1563, citing Duplantier v.United States, supra.
[2] The board members argued that their status as unsalaried elected officials distinguished them from the employees involved in a previous Second Circuit case. The court responded by stating that their status as elected officials actually militates in favor of more stringent filing requirements. Kaplan,759 F.2d at 261. The court noted that while their status as elected officials "does not strip them of all constitutional protection [citation omitted] . . . [i]n matters of financial disclosures, however, as in other respects, they should expect even less privacy than their private counterparts." Id., citing Plante,supra, at 1135-36.