Alcee **HASTINGS**, Plaintiff,

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 91–1713.**

United States District Court, District of Columbia.

Sept. 17, 1992.

Michael Davidson, Senate Legal Counsel, Morgan J. Frankel, Asst. Senate Legal Counsel, Theodore C. Hirt, D. Scott Barash, Attys., Civil Div., Dept. of Justice, Washington, D.C., for the government.

Robert S. Catz, Stephanie Y. Moore, Washington, D.C., William M. Kunstler,

Ronald L. Kuby, New York City, for plaintiff.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Judge Alcee Hastings, a federal district court judge, was removed from office by the United States Senate after he was convicted on articles of impeachment on October 20, 1989. Impeachment is an extraordinary remedy. As an essential element of our constitutional system of checks and balances, impeachment must be invoked and carried out with solemn respect and scrupulous attention to fairness. Fairness and due process must be the watchword whenever a branch of the United States government conducts a trial, whether it be in a criminal case, a civil case or a case of impeachment.

■ The key issue in this case is whether a life-tenured Article III judge who has been acquitted of felony charges by a petit jury can thereafter be impeached and tried for essentially the same alleged indiscretion by a committee of the United States Senate consisting of less than the full Senate. This Court determines that the answer is no.

The plaintiff is a former United States District Court judge. He has brought this action against the United States of America, the United States Senate, and several individual federal officers claiming that he was impeached, convicted and removed from judicial office in violation of the Constitution. He seeks a declaratory judgment as well as injunctive relief reinstating him to his former office and restoring his judicial salary. The defendants have filed a motion to dismiss on the grounds that this Court lacks jurisdiction to hear this action. The Court held a hearing on the motion on June 9, 1992 and is now prepared to rule.

## I. FACTS [1]

Alcee Hastings was appointed to the bench for the United States District Court for the Southern District of Florida in 1979. He was indicted in December of 1981 on a charge of conspiracy to solicit and accept a bribe. On February 4, 1983, in a trial presided over by the late Judge Edward Gignoux of Maine, one of the most highly respected United States District Court judges of his day, Judge Hastings was acquitted by a jury. Six weeks after his acquittal, members of the Judicial Council of the Eleventh Circuit filed a complaint against Judge Hastings under the Judicial Disability Act, 28 U.S.C. §§ 331, 332, 372(c), 604(h). Three and a half years later the Judicial Council issued a report and sent it to the Judicial Conference of the United States. The Judicial Conference met on March 17, 1987, concurred in the findings of the Council and recommended to the Speaker of the House that Judge Hastings be impeached.

On August 3, 1988, the House adopted seventeen articles of impeachment against Judge Hastings. The first fifteen articles reformulated the conspiracy charge of which Judge Hastings had been acquitted. They also charged Judge Hastings with presenting false testimony and fabricated evidence. Judge Hastings filed a motion to dismiss with the Senate which the Senate later rejected. The Senate convened an Impeachment Trial Committee pursuant to Rule XI of the Rules of Procedure and Practice when Sitting in Cases of Impeachment. Immediately thereafter, Judge Hastings filed a suit in United States District Court for the District of Columbia challenging the use of a trial committee as unconstitutional and seeking a preliminary injunction to prevent the impeachment proceedings from going forward. The court dismissed the complaint for lack of jurisdiction. *See Hastings v. United States*, 716 F.Supp. 38 (D.D.C.1989). The trial went forward before the committee. On October 19 and 20, 1989 the Senate held debate on the Articles of Impeachment. Judge Hastings was convicted on Articles I, II, III,

---

**1.** For purposes of evaluating jurisdiction, the allegations of the complaint are to be construed in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, there is no question about the facts in this case since the defendants have described identical facts in their motion to dismiss. *See* Defendants' Motion to Dismiss, 4–13.

IV, V, VII, VIII, and IX. He was acquitted on Articles VI, XVI, and XVII. The Senate did not vote on Articles X–XV. *See* 135 Cong.Rec. S13783–88 (daily ed. Oct. 20, 1989).

When the voting record of the Impeachment Trial Committee was reviewed, it revealed that the twelve members of the committee did not vote to impeach by the required two-thirds majority on *any* of the articles of impeachment. The Chair and Vice Chair of the Impeachment Trial Committee, Senator Bingaman and Senator Specter, filed statements in support of acquittal. The committee proceedings were videotaped, but it is unclear how many senators actually reviewed the tapes.[2] Nonetheless, enough senators who had not heard the evidence personally voted to convict to constitute the necessary two-thirds majority. Following his conviction, Judge Hastings was removed from judicial office, and his judicial salary was no longer paid to him. In July of 1991 he filed this action.

## II. JURISDICTION

### A. *Significance of the* Nixon *Decision*

■ The defendants urge the Court to dismiss this action on the grounds that it lacks jurisdiction to review any matter having to do with impeachment. The defendants claim that the political question doctrine applies to this case, therefore it is nonjusticiable. For support, they cite the decision by the Court of Appeals for this circuit in *Nixon v. United States,* 938 F.2d 239 (1991). In that case, former federal district judge Walter Nixon sued the Senate after he was impeached and convicted claiming among other things that the procedures used by the Senate violated the Constitution. The Court of Appeals held

that it lacked jurisdiction. The majority held that the case was nonjusticiable because it presented a political question. Judge Randolph concurred in the judgment, but wrote a separate opinion in which he said, "I see no need to rely on the somewhat 'amorphous' doctrine of 'political question[s].'" *Nixon,* 938 F.2d at 249 *citing Morgan v. United States,* 801 F.2d 445, 447 (D.C.Cir.1986) (Scalia J.) *cert. denied,* 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987). Judge Edwards dissented. In his opinion, he concluded that the case was justiciable although on the merits he concluded that Nixon's impeachment trial had not violated any constitutional requirement.

The Supreme Court has agreed to hear the Nixon Case on the issue of jurisdiction specifically as well as on the issue of whether the Senate can assign the collection of evidence in an impeachment proceeding to a special panel rather than have the entire case heard by the Senate at large. *See* —— U.S. ——, 112 S.Ct. 1158, 117 L.Ed.2d 406 (1992).[3] In view of the grant of certiorari on the identical issue presented in this case, the Court believes that the *Nixon* case does not preclude it from reaching a decision in the *Hastings* case. It should also be noted that Judge Hastings filed a complaint protesting the procedures to be used by the Senate before his impeachment trial. *See Hastings v. United States Senate,* 716 F.Supp. 38 (D.D.C.1989).[4] Although this earlier action was properly dismissed because it did not present a ripe question for review, it was analogous to the practice used in an Article III trial of "preserving an objection" for appeal.

There are crucial factual differences between the cases of Judge Hastings and

---

2. The complaint alleges that twelve senators checked out the videotapes. Complaint, ¶ 62. The defendants have made no representation about this fact.

3. The case presents two questions:
(1) Does refusal of court of appeals to review claim that Senate committee trial is unconstitutional contrary to holding in *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), disrupt constitutional balance of powers, and threaten judicial independence?

(2) Does committee trial on perjury charges, in which 88 members of Senate are unable to evaluate witness credibility, violate express constitutional command that Senate "try all Impeachments"?
—— U.S. ——, 112 S.Ct. 1158, 117 L.Ed.2d 406 (1992).

4. Judge Nixon intervened as a party plaintiff in that case.

Judge Nixon. Whereas Judge Nixon was convicted of two counts of perjury by a jury after a trial in federal district court, a jury acquitted Judge Hastings of the underlying charges which formed the basis of the articles of impeachment filed against him. It was not possible as it was with Judge Nixon to submit a certified copy of his conviction on criminal charges as probative evidence of his conduct. Whatever the burden of proof may be in an impeachment trial, the crucial evidence proving with any degree of certainty that Judge Hastings actually committed "High Crimes and Misdemeanors" as charged in the Articles of Impeachment had to come from live witness testimony.

In *Nixon*, the Court of Appeals specifically chose not to decide an issue that is essentially raised in this case. The Court of Appeals wrote as follows:

> "Because the two-thirds vote requirement of Art. I, § 3, cl. 6 is so concrete, the argument that it serves as an unalterable limit on the textual commitment of impeachments, with judicial review available for at least some claims of Senate disregard, is far more plausible under *Powell* than Nixon's effort to find justiciable limits in the word 'try.' *However, we need not decide this issue, so we leave it for the unlikely day of its arising.*" (emphasis added) *Nixon*, 938 F.2d at 246, n. 2.

The deliberative body that actually heard the evidence against Judge Hastings, namely the twelve-member Impeachment Trial Committee, did not have the votes to convict Judge Hastings by the necessary two-thirds majority. The votes of senators who did not actually "try" the impeachment must be counted to accumulate the two-thirds majority. The event the Court of Appeals felt compelled to reserve as possibly invoking judicial review in effect has surfaced. Courts must have jurisdiction to determine whether the "unalterable limits" of the Constitution have been preserved.

### B. *Justiciability*

The defendants claim that the issues Judge Hastings has raised are nonjusticia-ble because they are "political questions" which the Constitution has textually committed to another branch of government. As this Court has already noted, even the majority in *Nixon* is not in agreement on this point. The political question doctrine first enunciated by the Supreme Court in *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), is itself problematic because it runs against one of the core principles of our system of constitutional law. "It is emphatically the province and duty of the judicial department to say what the law is." wrote Chief Justice John Marshall in his landmark opinion in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). This fundamental conflict may well be the reason that the Supreme Court has so rarely invoked the political question doctrine since *Baker v. Carr*. As Judge Edwards noted in his dissent in *Nixon*, the Supreme Court has rejected political question arguments in more than a dozen cases while upholding it in only one, *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). *See Nixon*, 938 F.2d 239, 258 (Edwards, J., dissenting). *Baker v. Carr* was a case about apportionment. *Gilligan v. Morgan* concerned the activities of the National Guard in Ohio following the incident at Kent State University. Judge Hastings has raised claims that are wholly different from any raised in those two cases.

Impeachments are not political in nature. To impeach an Article III Judge, the judge must be brought up on real charges, i.e., High Crimes and Misdemeanors, and receive a real trial before the full Senate as clearly required by the Constitution. Nothing less will do if this nation is to maintain an independent judiciary. Contrary to what has been argued by Senate counsel, this Court holds that the proceeding as it applies to the judiciary is not a political proceeding. It is every bit a judicial proceeding. There is no basis to interpret the Constitution to allow the removal of a judge for political reasons. To do so would be the antithesis of creating and sustaining an independent judiciary. If Senate counsel is correct, then President Roosevelt

should have pursued impeachment of the Supreme Court justices who declared a number of his laws unconstitutional rather than a "court packing" plan that ultimately failed.[5]

In *Powell v. McCormack* Congressman Adam Clayton Powell challenged the House of Representatives when it refused to seat him even though he had been duly elected by the people of his district. The House argued that it had exclusive power to determine the qualifications of its members therefore the Supreme Court lacked jurisdiction to hear the matter. In its decision, the Court specifically distinguished between subject matter jurisdiction and justiciability. *Id.* 395 U.S. at 514, 89 S.Ct. at 1960. The former is a question of whether a matter can be submitted to the judicial power of the United States. The latter is a question of allocation of powers between branches. The Supreme Court held that there was jurisdiction over Congressman Powell's claims because a question of constitutional interpretation had been raised. It also held that the dispute was justiciable and that it did not present a political question. After examining the text and history of the Constitution in great detail, the Court concluded that to allow Congress to have exclusive and unreviewable authority to decide the qualifications of its members would thwart the Constitutional scheme which is intended to allow the people to rule themselves. In keeping with the decision in *Powell v. McCormack*, Judge Hastings has presented a justiciable question.[6]

C. *Judicial Review of Impeachment and the Structure of Our Government*

The defendants' arguments under the political question doctrine have served to focus this Court's scrutiny on the words of the Constitution, specifically whether there has been a "textually demonstrable commitment" of all matters relating to impeachment to the legislative branch. Of central importance are structural concerns about our constitutional system of government and what role if any judicial review of impeachment plays. In essence, this case presents a new version of *Marbury v. Madison.* The basic framework of our three-branch system is at issue. A single branch of government claims to have uncontested dominion over another branch by arrogating to itself the unreviewable authority to interpret the Constitution. As the Framers said in The Federalist Papers,

It is agreed on all sides that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident that none of them ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers. *The Federalist*, No. 48 (Madison).

The Framers also said,

"[T]he great security against a gradual concentration of the several powers in the same department consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others." *The Federalist*, No. 51 (Madison).

As in *Marbury v. Madison*, this case requires the Court to consider the purpose and function of the three branches and indeed of our delicate system of balance of powers.

Impeachment was never intended to be an ominous weapon that the legislature

---

5. If the Senate's position is adopted, meaning that a judicial impeachment is strictly a "political matter" defined as it was by Senator Giles—who believed that a jurist can be impeached in order to give the political party in power a judicial seat to fill—*see infra*, at 497, the independence of the judiciary will have been severely compromised. It would mean, in effect, that a political party which gained a majority of seats in the House and two-thirds of the seats in the Senate could without any legitimate basis purge from the federal bench those whose views were contrary to theirs. Insisting as they did on life tenure for the judiciary, the founding fathers could not have shared these views.

6. This Court cannot improve on the eloquent and thorough analysis of *Powell* Judge Edwards has already given in his dissent in *Nixon.* See *Nixon*, 938 F.2d 239, 254–258 (1991).

could hold over the head of the judiciary and invoke at will without limitation or reason. In establishing this nation's tripartite form of government, the Constitution had little to say about the Judicial Branch. While Article II which deals with the Executive Branch of Government clearly states that "The President, the Vice President and all civil Officers of the United States" are subject to impeachment, Article III which applies to the Federal Judiciary is eloquently silent on the subject. Indeed, there is nothing that this Court finds in its reading of the constitutional papers that would negate the proposition that the only officers of government specifically made subject to impeachment under the Constitution are members of the executive branch. Article I which applies to the legislative branch like Article III is silent on impeachment as to its members, and it has been accepted that members of Congress are not impeachable. It seems that the Constitution should have provided some procedure for ridding the Government of an errant member of the Congress.[7]

Article III is the shortest of the three basic articles. It is devoted exclusively to the judiciary. In essence, it provides that the judiciary shall consist of a Supreme Court and such inferior courts as the Congress shall create. Article III insures the independence of the judicial branch by providing that Article III judges shall have tenure during good behavior and shall not have their remuneration diminished while in office.[8] Article III is silent with respect to how a judge who does not comport with the "good behavior" standard shall be removed from office. The way that the judiciary has been made subject to Article I impeachment proceedings has been through interpretation of the phrase "civil officers" to encompass judges.

Thus, by including Article III judges as "civil officers of the United States" the Constitution has been interpreted to subject judges to the full impeachment process spelled out in Article I. Judges have been subjected to the impeachment process since 1804 when Judge John Pickering was impeached. *See* William Rehnquist, *Grand Inquests* 127 (1992). Since that time, some fourteen judges have been subjected to impeachment and trial. *Id.* at 119. With such long-standing precedent, it has become settled law that judges may be impeached as "civil officers of the United States" Even though the federal judiciary is subject to the impeachment process, the constitutional principles of separation of powers and checks and balances must be scrupulously honored. " '[T]he Constitution enjoins upon its branches separateness but interdependence, autonomy but reciprocity.' " *Morrison v. Olson*, 487 U.S. 654, 694, 108 S.Ct. 2597, 2620, 101 L.Ed.2d 569 (1988) *citing Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952). Our system was meant by the Framers to be a "self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Buckley v. Valeo*, 424 U.S. 1, 122, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976). The Supreme Court has recognized that the three branches are not to be entirely fenced off one from the other.[9] To say that impeachment trials are wholly the province of the legislative branch does not mean that the judicial branch can never reach any issue that involves impeachment. Independence is not isolation.

---

7. It was this dilemma which gave rise to *Powell v. McCormack.* The House had previously disciplined Congressman Powell, and it did not wish to seat him again after having decided he had abused his office. However, as the Supreme Court ultimately decided, the Constitution did not bar Congressman Powell from seeking re-election, and the House had no authority to prevent him from taking his seat once the people of his district had elected him.

8. The Founding Fathers devoted two numbers of *The Federalist* to Article III: No. 78 (Hamilton) which is entitled "Tenure of Office of the Judicial Department" and No. 79 (Hamilton) which is entitled "Support and Responsibility of the Judiciary." In Number 78, Publius writes, "There is no analogous provision for 'civil officers of the United States.' "

9. For example, the judicial branch may participate in the appointment of independent counsel. *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988).

For this Court to conclude that the Senate's action in an impeachment proceeding is unreviewable as a political question would regulate the judicial branch of government to a subservient position. Impeachment of Article III judges could then be carried out so as to override the requirement that judges have life tenure during good behavior and undiminished salaries. This would be contrary to both the wording and intent of the Constitution.

The Constitution says,

"The judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the Congress may from time to time ordain and establish. The judges, both of the supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services, a compensation which shall not be diminished during their continuance in office." Art. III, sec. 1.

These words presume that judges will be worthy of their posts, that they will serve for life, and that they will be removed from office only when they have engaged in conduct that constitutes a major indiscretion. Life tenure for the judiciary is itself a fundamental check on the extensive powers of the political branches. It guarantees that there will be a place in our government for justice apart from politics. In his history of the impeachment of Justice Samuel Chase, Chief Justice William Rehnquist has described the attitude of the senators who were in favor of using impeachment for strictly political purposes. One such senator, William Branch Giles of Virginia, was heard to say,

Impeachment was not a criminal prosecution ... and a removal by impeachment was nothing more than a declaration by Congress to this effect: you hold dangerous opinions, and if you are suffered to carry them into effect you will work the destruction of the Union. We want your offices for the purpose of giving them to men who will fill them better. William Rehnquist, *Grand Inquests*, 27 (1992)

*citing* John Quincy Adams, *Memoirs of John Quincy Adams*, vol. I, 322 (1874).

It is telling that when Giles and his political allies sought to carry out this philosophy by impeaching Justice Chase for his conduct on the bench—none of which came close to being criminal—the justice was acquitted on all the articles of impeachment.[10] Some might use the example of Justice Chase's impeachment to argue that judicial review is not necessary because we can rely on the scruples of the individual senators to preserve impeachment for true instances of "high crimes and misdemeanors" and not to use it indiscriminately to punish political adversaries. However, the fact that he was impeached for conduct that today we would regard as at worst, reversible judicial error, demonstrates just how awesome the power of impeachment actually is.

Ours is a system of checks and balances. To allow impeachment without any check on its abusive use would destroy the independence the Founding Fathers intended the judiciary to have. Once impeached and convicted, judges may never again be able to hold an office of public trust. The Constitution even bars the extraordinary remedy of a presidential pardon. Specifically, Article II, section 2 reads "The President shall ... have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment."

From its own experience the Court knows of a number of instances where the need for an independent Judiciary as the founding fathers envisioned has been amply demonstrated. While in this nation there is majority rule, it is also clear that the Constitution is protective of minority and individual rights. The Bill of Rights is the principal source of these protections. The case law is replete with examples where a popularly elected legislature has transgressed individual rights by enacting legislation perceived to be demanded by the majority of the electorate. It is the judiciary to which the individual who has had his

---

**10.** Justice Chase was charged with offenses that included his excluding the testimony of a particular witness and his refusal to grant a continuance in a case.

or her fundamental rights trampled looks for protection and redress. To conclude that the legislature can remove a judge from office and deprive that judge from ever again holding public office without providing any opportunity for judicial review even in the most egregious case would be contrary to the principle of justice that undergirds our Constitution and would vitiate the judiciary's planned role as a countermajoritarian force in our government.

### D. Other Jurisdictional Issues

█ The defendants have raised three other issues which they claim bar this Court's jurisdiction. First they argue that plaintiff's suit is barred by the doctrine of laches because it was filed twenty-one months after he was convicted by the Senate. For the doctrine of laches to apply, the Court must find (a) that plaintiff has caused an *unreasonable* delay and (b) that the defendants have been prejudiced by the delay. *Rozen v. District of Columbia*, 702 F.2d 1202, 1203 (1983); *Powell v. Zuckert*, 366 F.2d 634, 636 (1966). The Court finds that neither of these conditions are met in this case. Plaintiff claims he exhausted his resources and could no longer pay counsel by the time his impeachment trial ended. Given the complexity of the issues involved here and the gravity of a decision to sue the United States of America and the United States Senate, there is nothing unreasonable about choosing not to file an action in haste. Also, defendants have not been prejudiced by the delay in time. No crucial evidence has been lost. There are no issues of fact in dispute. The defendants can propound the same legal arguments now that they would have had the suit been filed a year and a half earlier. While it is

true that the President has appointed another individual to fill the vacancy on the bench in the Southern District of Florida, the defendants are still capable of providing relief to the plaintiff.[11] In fairness to Judge Hastings, it took the House seven years from the date he was indicted on criminal charges to impeach him. Thus arguments about delay can apply equally to either side in this case and weigh against invoking the equitable doctrine of laches.

█ Next, the defendants claim that the Speech and Debate Clause of the Constitution prevents any court from reviewing the internal procedures of the Senate. The Speech and Debate Clause says,

> The Senators and Representatives ... shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place. Art. I, § 6.

This clause has been interpreted to keep the Congress immune from suit based on its legislative activities and to "things generally done in a session of the House by one of its members in relation to the business before it." *See Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L.Ed. 377 (1880).[12] In Kilbourn, the Court held that the House of Representatives could not punish someone for criminal contempt when he failed to respond satisfactorily to a subpoena duces tecum. More recently, in ruling that the Clause did protect a senator and his aid who were later investigated by a grand jury for putting the text of the Pentagon Papers into the record at a subcommittee hearing, the Court said that

---

**11.** In his complaint the plaintiff seeks an injunction ordering that he be reinstated to his seat on the bench in the Southern District of Florida as well as the return of back pay and such other relief as the Court deems appropriate.

**12.** It is interesting to note on the question of jurisdiction that *Kilbourn* cites with approval the following language from the Supreme Judicial Court of Massachusetts:

> The house of representatives is not the final judge of its own power and privileges in cases in which the rights and liberties of the subject are concerned, but the legality of its action may be examined and determined by the court. That house is not the legislature, but only a part of it, and is therefore subject in its action to the laws, in common with all other bodies, officers, and tribunals within the Commonwealth. 103 U.S. at 199 *citing Burnham v. Morrissey*, 14 Gray 226.

"Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.... the courts have extended the privilege to matters beyond pure speech or debate in either House, but 'only when necessary to prevent indirect impairment of such deliberations.'" *Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972).

The clause has not been interpreted to make the Senate immune from suit in all cases, most especially not in cases where there is a question of an individual's rights or of constitutionality.

This case is entirely different from an attempt by a private entity to quash a subpoena from a congressional investigating committee. *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975).[13] As the Court said in *Eastland,* the legislative function necessarily includes the power to investigate. 421 U.S. at 504, 95 S.Ct. at 1822. However, this case does not involve any legislative issue or any investigation which must be pursued for legislative purposes. Plaintiff's action involves a unique senatorial function: the trial of impeachments. This action in no way seeks to impede any member of the Senate from expressing free and frank views on the articles of impeachment brought against Judge Hastings.

█ Finally, the defendants argue that the United States Claims Court, not the United States District Court, has exclusive jurisdiction over this matter. This argument is predicated on the assumption that the Court has no jurisdiction to grant the plaintiff injunctive relief in this case. *See* Motion of Defendants to Dismiss, 24. As has already been set forth, that assumption fails. Defendants added a footnote in which they try to anticipate this possibility. They claim that even if this Court does have injunctive authority over this claim, the Claims Court has enough power to give injunctive relief. *See* Motion of Defendants to Dismiss, 24 n. 18. This argument misses the big picture. Where it is the injunctive relief, and not the suit for lost compensation, that is at the core of the lawsuit, the suit properly belongs in district court. *See Nixon*, 938 F.2d at 251–2. The Tucker Act, 28 U.S.C. § 1491, does not control this action. Jurisdiction lies in this Court and not the United States Claims Court.[14]

## III. CONSTITUTIONAL REQUIREMENTS FOR IMPEACHMENT

This matter came before the Court on the defendants' motion to dismiss for lack of subject matter jurisdiction, *see* Fed. R.Civ.P. 12(b)(1), which the Court is denying. Defendants have also moved for dismissal on the grounds that plaintiff has failed to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The defendants have represented the facts to be exactly the same as those alleged by the plaintiff, *see* Defendants' Motion to Dismiss, 4–13, and this case is governed by a core principle of law. At the hearing, the Court understood counsel for plaintiff to be submitting the case for summary judgment and counsel for defendants as having no objection to the Court considering the case in that procedural posture. Since the defendants have addressed written and oral

---

**13.** The Speech and Debate Clause did bar jurisdiction in this case.

**14.** On August 31, 1992, the United States Claims Court issued a decision in *Alcee Hastings v. United States*, No. 91–1173C. In that case, Judge Hastings pursued only his claim for recoupment of the legal fees he expended defending himself before the Judicial Council and the Senate. In his opinion, Judge Thomas J. Lydon dismissed the action under 28 U.S.C. § 1500 on the grounds that the Claims Court lacked jurisdiction while this action was pending in United States District Court.

arguments to the merits of the dispute before the Court and as there is no genuine issue of material fact left in dispute, summary judgment is appropriate at this time.

On the merits, the plaintiff claims (1) that the Constitution requires that the Senate provide sufficient financial support to guarantee an impeached judge effective assistance of counsel; (2) that double jeopardy barred his impeachment; and (3) that laches also barred his impeachment because he was charged five years after his acquittal by a jury and seven years after his alleged receipt of a bribe took place. Finally, the plaintiff claims he was denied an impeachment "trial" as the Constitution requires because the evidence against him was heard by a committee of twelve senators rather than by the entire body of the Senate. The defendants dispute all these claims.

■ The Court will dismiss the first three claims. The Constitution does not specifically address the right to counsel in an impeachment proceeding, but such a right seems in keeping with general constitutional principles of fairness and justice. However, the right to have effective assistance of counsel provided at public expense is limited to criminal cases. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The requirement that an Article III judge's salary not be reduced does not prevent Congress from taxing that salary. *See O'Malley v. Woodrough,* 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939). As the Supreme Court said in that case, "judges are also citizens, and ... their particular function in government does not generate an immunity from sharing with their fellow citizens the material burden of the government whose Constitution and laws they are charged with administering." *Id.* at 282, 59 S.Ct. at 840. Nor does the Compensation Clause require that judicial salaries be indexed to compensate for inflation. *Atkins v. U.S.,* 556 F.2d 1028, 1045 cert. denied 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978). As the Court said in that case, "Indirect, nondis-

criminatory diminishments of judicial compensation, those which do not amount to an assault upon the independence of the third branch or any of its members, fall outside the protection of the Compensation Clause." *Id.* at 1045. *See also Duplantier v. United States,* 606 F.2d 654 (5th Cir.1979) (penalties on judges for failing to file financial disclosure statement do not violate Compensation Clause). The requirement that a judge's compensation not be diminished during his tenure in office, does not require that the government insulate judges from expenses, especially those involving acts they did not undertake in their official capacity.[15] There is no basis for the plaintiff's claim that he was entitled to have the Senate contribute to his legal fees.

■ Plaintiff also has no legal foundation for his claim that double jeopardy bars his impeachment. Impeachment is a wholly separate proceeding from a criminal trial, and it has an entirely different purpose, that is to remove from office those judges who have failed to serve during good behavior. Impeachment is *sui generis.* Double jeopardy no more bars an impeachment trial following a criminal trial than it does a civil trial following a criminal trial. It is long settled law that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1937) (addition to taxes not prohibited by double jeopardy because it is civil penalty). A penalty is considered punishment when it serves the "twin aims of retribution and deterrence." *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (liability for disproportionate penalties under False Claims Act violates double jeopardy when defendant has already been sentenced to jail term and fine). While Judge Hastings may feel personally that his impeachment was intended as retribu-

---

**15.** The Court does not address the question of whether a judge is entitled to be provided with

legal representation when he is the object of a petition for writ of mandamus.

tion against him, the primary purpose of a judicial impeachment is to protect the integrity of our federal court system. The Constitution itself explicitly provides for the same individual to undergo both criminal and impeachment proceedings. It states, "the party convicted [by the Senate] shall nevertheless be liable and subject to indictment, trial, judgment, and punishment, according to law." Art. I, Sec. 3, cl. 6–7. The Court will dismiss the claim for relief based on double jeopardy.

■ Next, the plaintiff claims that the doctrine of laches barred his impeachment prosecution. As stated before, the Court must find that there has been unreasonable delay that prejudices the opposing party in order for laches to apply. *See Powell v. Zuckert,* 366 F.2d 634. For the same reason that the Court declined to accept this argument when the defendants made it in favor of dismissing this case, the Court now rejects it as a basis for granting relief to the plaintiff. Impeachments are rare, and they are very significant matters. The legislature must be given adequate time to verify that an impeachment is warranted. In this case, Congress waited for the Judicial Conference to take action under the Judicial Disability Act. While there was delay, it was reasonable under the extraordinary circumstances of this case. The laches claim will be dismissed.

Only one claim remains, however, it is the one with merit. Did the use of an impeachment trial committee pursuant to Rule XI of the Rules of Procedure and Practice when Sitting in Cases of Impeachment[16] violate the Constitution? This Court believes it did. The Constitution says "The House of Representatives shall chuse (sic) their Speaker and other officers; and shall have the sole power of impeachment." Art. I, sec. 2, cl. 5. It goes on to say that,

The Senate shall have the sole power to try all impeachments. When sitting for that purpose, they shall be on oath or affirmation. When the President of the United States is tried, the Chief Justice shall preside: and no person shall be convicted without the concurrence of two thirds of the members present. Judgment in cases of impeachment shall not extend further than to removal from office, and disqualification to hold and enjoy any office of honor, trust or profit under the United States: but the party convicted shall nevertheless be liable and subject to indictment, trial, judgment, and punishment, according to law. Art. I, Sec. 3, cl. 6–7.

This language gives the House of Representatives exclusive power to issue articles of impeachment and the Senate sole power to "try" impeachments. While the Senate does have considerable discretion to decide what procedures it will use when it conducts an impeachment trial, it cannot ignore the mandate of the Constitution which requires that the procedure merit the name "trial." As Judge Edwards stated in his dissent in the *Nixon* case,

[T]he Constitution's use of the word "try" to describe the Senate's function in rendering impeachment judgments implies a duty to accord at least the rudimentary hallmarks of judicial fact-finding, including the receipt of evidence, the examination of witnesses, right to counsel and a chance for hearing by the accused. *Nixon,* 938 F.2d at 259–260.

The process used by the Senate did not meet this basic standard.

The defendants argue that the Senate has absolute discretion to decide what procedures it will use in an impeachment trial. Followed to its logical conclusion, this argument would allow the Senate to try an impeached officer of the United States by a committee of one, in effect designating one of its officers to act as a fact-finder. The defendants argue that should they wish to adopt such a procedure, it is their prerogative to do so. That is not what the Consti-

---

**16.** The rule can be found in S.Doc. No. 101–3, 101st Cong., 1st Sess. 15 (1989). The text of Rule XI is appended to this opinion.

tution says. The accused officer must have a real trial[17] before the full Senate.

## A. *Flaws in the Hastings Impeachment Trial*

The use of an impeachment trial committee did not comport with the requirement that Judge Hastings be "tried." The majority of the Senators never had any first-hand knowledge of the evidence against Judge Hastings. They did not participate in the hearings where testimony was taken and evidence submitted.[18] The committee itself was not convinced to convict by a two-thirds majority on any of the counts, and the chairman and vice chairman made statements in favor of acquittal.

Article III appellate courts give enormous deference to findings of fact made by trial judges. Such findings will only be overturned where they are clearly erroneous. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding ... can virtually never be clear error.") *See also* Wright and Miller, *Federal Practice and Procedure* § 2586 (1971). This standard has been adopted because the courts of appeals and the Supreme Court itself have recognized the special status of a fact finder who is actually

present to receive evidence and hear testimony. By failing to be present to take testimony at Judge Hastings impeachment trial, the vast majority of senators in effect have placed themselves in the position of a review tribunal and not a trial court.

It is unquestionably true that a juror who has not been present for every phase of the trial, opening statements, the receipt of all testimony and evidence, closing statements and instructions from the court, may not participate in jury deliberations. In fact, in a criminal case, if a juror must be excused during a trial for failing to appear or for any other reason and there is no alternate to take his or her place, the trial can continue *only if* both sides agree to submit the case to a jury of less than twelve. *See* Fed.R.Crim.P. 23(b). Obviously the Senate is not required to follow the identical procedures used in judicial trials, but it violates basic notions of fairness to have those who vote on the final verdict not be present to find all the facts.[19]

The impeachment trial committee procedure is certainly not as outrageous as many hypothetical examples the Court has or could pose. There is no question that the Senate took its impeachment responsibilities seriously. It had the intention of fulfilling its constitutional duty. Unfortunately, the Senate cared too much about expediency. Justice cannot always be constrained by time.

---

**17.** Trials have historically taken a variety of forms, *see Nixon*, 938 F.2d 261–265 (Edwards, J., dissenting). This Court looks only at the question presented in this case: what kind of trial does the Constitution require in a case of impeachment.

**18.** The complaint alleges that only 12 senators checked out the videotapes of the fact-finding sessions. The defendants have not disputed this fact.

**19.** The Senate itself is at a minimum aware of these fundamental principles. In 1974 as Watergate was emerging as a major legal concern, the Senate Committee on Rules and Administration produced a publication containing miscellaneous documents relating to impeachment. The introduction states that the documents were prepared at the request of Senator John Tower and were provided to the Rules Committee for the permanent record. Memorandum II was

prepared by Professor Stephen R. Goldstein from the University of Pennsylvania Law School. It is entitled "Effect of the End of a Congress and Start of a New Congress on a Pending Impeachment Proceeding: The Senate Trial." It discusses the procedures to be used in an impeachment trial and ultimately concludes the following:

> [I]t would seem to be the better view that in a presidential impeachment at least, all efforts should be made to have all Senators hear and see all the witnesses and that reading a transcript should not generally be deemed a sufficient substitute for this. Of course, a Senator may occasionally be absent, but that would not justify setting up a system to encourage or promote this. Impeachment: Miscellaneous Documents, S.Comm. on Rules and Administration, 93rd Cong.2d Sess., 159 (1974).

### B. *The Burden on the Senate*

■ An impeachment trial must be by the full Senate. The Constitution explicitly states that an impeachment shall be tried by the Senate. This Court holds that a trial by the Senate means by the full Senate and not by a committee of the Senate. Each senator who votes on the impeachment must have the ability to judge the credibility of witnesses and hear with their own ears the evidence as it is presented. The receipt of evidence is a crucial phase of a trial, and it cannot be delegated to a small group of senators. In his recent book on the history of impeachment, Chief Justice Rehnquist has written,

> [A] mere record of questions and answers tells us nothing about what courts call the 'demeanor' of the witness—the expression on his face, his attitude, his intonation, and similar things that the senators sitting in judgment were able to view firsthand. It is the difference between reading a letter from someone and talking to the person face-to-face; the words used in the conversation may be the same as the ones used in the letter, but because one is able to see the person with whom one is conversing, the conversation may given an entirely different impression from the letter. William Rehnquist, *Grand Inquests* 68 (1992).

When the Constitution was written, the Senate had only twenty-six members and far less business than does its contemporary version. The senators could more easily be gathered to participate in an impeachment trial from start to finish. During the intervening centuries, the country has grown and the work of the Senate has expanded in geometric proportions, to the point where it would be difficult on the part of the Senate to halt all of its business, gather all its members, and devote itself entirely to an impeachment trial for the several weeks or perhaps more necessary. However, the sacrifice only seems enormous until it is seen in context. What is at stake is not just the fate of an individual officer of the United States but in fact the integrity of our constitutional system of government. As the Framers wrote in The Federalist:

> The necessity of a numerous court for the trial of impeachments is equally dictated by the nature of the proceeding..... The awful discretion which a court of impeachment must necessarily have, to doom to honor or to infamy the most confidential and the most distinguished characters of the community, forbids the commitment of the trust to a small number of persons. *The Federalist*, No. 65 (Hamilton).

The burden on the entire Senate should not be too great where as has been the case in most instances in the past a judicial officer has been convicted in a court of law of a "high crime or misdemeanor" because a full and complete trial record presumably has already been compiled. Where, however, it is determined to proceed against a judge after the judge has been acquitted by a petit jury or the impeachment has occurred without the benefit of a criminal trial, then it is absolutely essential that the judge be tried by the full Senate in a de novo proceeding, no matter how great the burden. If there is to be any change in such an important procedure, a Constitutional amendment will be necessary.

Impeachments take place not when government is operating as it should but rather when government has gone hideously awry, when it is seriously alleged that a high and trusted public official lacks the respect for law and ethics necessary to hold an office of public trust. These have always been and should continue to be rare events. From the time of Justice Chase's impeachment to the present, only thirteen federal judges have been impeached. *See* William Rehnquist, *Grand Inquests*, 119 (1992). There is no reason for this pattern not to continue, and the burden of a full trial on the Senate will be imposed infrequently. By its very nature, impeachment must be accorded the highest priority and be allotted whatever time it takes—even if it is burdensome to do so—in order to give due respect to the coordinate branch of government being affected. The Senate may well have instituted trial committees in order to accommodate its flow of legislative business, but that decision ignores

both the plan of the Constitution as well as fundamental priorities of our governmental structure. Shortcuts cannot be taken with the checks and balances which allow three branches to work together or there will be no opportunity for the branches to carry out their independent functions.

### C. *Due Process and Impeachment*

The fundamental constitutional concept of due process also demands that impeachments be tried by the full Senate. The major constitutional directive on procedure appears in the Fifth Amendment: "No person ... shall be deprived of life, liberty, or property, without due process of law...." This clause makes no reference to any specific branch of government. It simply states one of the key principles that lies at the heart of our constitutional democracy: fairness.

An enormous body of law has developed around the concept of due process as it applies across American government. There is no question but that due process protections apply to congressional activities. A witness appearing before an investigative committee of Congress has the right to invoke the Fifth Amendment privilege against self-incrimination. *See Quinn v. U.S.*, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964 (1955); *Watkins v. U.S.*, 354 U.S. 178, 188, 77 S.Ct. 1173, 1179, 1 L.Ed.2d 1273 (1957) (Bill of Rights applies to Congressional investigations.) This Court believes that due process also applies to impeachment trials. Impeached judges have a protected interest at stake: their life tenure and future ability to hold public office. The Fifth Amendment was passed after the entire Constitution came into force. Therefore, it applies to all aspects of the Constitution. It is inconceivable to think that violent criminals, prisoners seeking parole, civil litigants with the smallest complaints, and witnesses who appear before Congress have due process rights but that judges, who have been appointed by the President and confirmed by the Senate do not when they face impeachment.

The language of the Constitution committing the impeachment process to Congress speaks in terms of trials and convictions, oaths and affirmations. The Constitution distinguishes impeachments from indictments, but presumably does so because the similarity is so great that there is a risk of confusion. The Founding Fathers clearly anticipated that an impeachment proceeding would strongly resemble a judicial proceeding. The Constitution itself spells out a number of procedural requirements for criminal and civil trials. Under the Sixth Amendment, a criminal defendant is entitled to a speedy, public jury trial. He is to have notice of the charges against him. He is entitled to confront the witnesses against him, and he is entitled to compulsory process to bring in witnesses in his defense. Civil litigants with the requisite amount in controversy are entitled to jury trials. The list of specific due process requirements for judicial trials fills volumes. There is no reason to believe that the full panoply of due process protections that apply to a trial by an Article III court necessarily apply to every proceeding. Impeachment trials are unique, and are entitled to be carried out using procedures that befit their special nature. However, they must be conducted in keeping with the basic principles of due process that have been enunciated by the courts and, ironically, by the Congress itself.

As the Supreme Court stated in *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970), "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." In *Goldberg v. Kelly* the Court held that New York State could not terminate benefits to welfare recipients without first affording them an oral pre-termination hearing. The Court did not require that the hearing "take the form of a judicial or quasi-judicial trial," 397 U.S. at 266, 90 S.Ct. at 1020, however, it did specify minimum requirements that had to be met in order to guarantee that the welfare recipients were given their due process rights. The hearing had to be oral in part because many of the affected individuals were likely to be illiterate, but also because "written submissions

do not afford the flexibility of oral presentations, they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important. Particularly where credibility and veracity are at issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision." A federal judge facing the loss of his office and salary and permanent banishment from public service is facing consequences of equivalent significance for him as is a welfare recipient about to lose the means of subsistence.

Six years later in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), Justice Powell cited Justice Frankfurter for his statement, " 'The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.' " *Mathews v. Eldridge*, 424 U.S. at 333, 96 S.Ct. at 902 *citing Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). This principle cannot be ignored.

## IV. CONCLUSION

Without depriving the House or the Senate of one iota of their exclusive constitutional powers to impeach, try and convict "officers" of the United States, this Court has jurisdiction to interpret what the Constitution says about impeachment. It states that the accused officer is entitled to a trial. This means a trial by the full Senate.[20] Judge Hastings did not get a trial by the full Senate. He is entitled to have one. The defendants' motion to dismiss is denied.

The Court having found that Judge Hastings was entitled to a trial by the full Senate, his impeachment and conviction must be overturned and remanded to the Senate for a trial that comports with constitutional requirements. This being the decision of the Court, judgment will be entered in favor of Judge Hastings. Because this

is such an important issue and will clearly be settled by the Supreme Court, the Court will stay its order until the issue has been decided on appeal.

## APPENDIX

## RULES OF PROCEDURE AND PRACTICE IN THE SENATE WHEN SITTING ON IMPEACHMENT TRIALS

XI. That in the trial of any impeachment the Presiding Officer of the Senate, if the Senate so orders, shall appoint a committee of Senators to receive evidence and take testimony at such times and places as the committee may determine, and for such purpose the committee so appointed and the chairman thereof, to be elected by the committee, shall (unless otherwise ordered by the Senate) exercise all the powers and functions conferred upon the Senate and the Presiding Officer of the Senate, respectively, under the rules of procedure and practice in the Senate when sitting on impeachment trials.

Unless otherwise ordered by the Senate, the rules of procedure and practice in the Senate when sitting on impeachment trials shall govern the procedure and practice of the committee so appointed. The committee so appointed shall report to the Senate in writing a certified copy of the transcript of the proceedings and testimony had and given before such committee, and such report shall be received by the Senate and the evidence so received and the testimony so taken shall be considered to all intents and purposes, subject to the right of the Senate to determine competency, relevancy, and materiality, as having been received and taken before the Senate, but nothing herein shall prevent the Senate from sending for any witness and hearing his testimony in open Senate, or by order of the Senate having the entire trial in open Senate.

---

**20.** This Court does not reach at this time questions about what other due process requirements apply to an impeachment trial because

those questions are not presented by the facts of this case.