**Jerry Don WAGGONER, Plaintiff,**

v.

**Alcee L. HASTINGS, Defendant.**

**No. 92–7284–CIV–NCR.**

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

March 23, 1993.

Jerry D. Waggoner, pro se.

Terence J. Anderson, Coral Gables, FL, for defendant.

## MODIFIED ORDER

ROETTGER, Chief Judge.

The precise question framed in this fascinating constitutional case has never been raised in the history of the Republic.

In short, it results from the unique situation of Defendant, Alcee Hastings, who was convicted of impeachment and removed by the Senate from the office of United States District Judge for this district in 1989, and was recently elected on November 3, 1992, to the 23rd Congressional District in the State of Florida.[1]

The precise language at issue is from Article I, Section 3, Clause 7, of the United States Constitution, as follows:

> Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law.

On the eve of Defendant's being sworn in as a member of the United States House of Representatives, Plaintiff, Jerry Don Waggoner, filed this complaint seeking to enjoin Defendant from being sworn in.

Unfortunately, the case was not filed until late in the afternoon of Wednesday, December 30, 1992, leaving only New Year's Eve and Monday, January 4, 1993, as usual work dates.[2]

At the status hearing on December 31st, Plaintiff, a second year law student at Nova University in Fort Lauderdale, appeared as did an assistant United States Attorney. However, the United States Attorney's office representatives advised that, although they were authorized to provide a member-elect of the House of Representatives with a defense, Defendant had declined their services when they managed to communicate with him on the morning of December 31. At that status hearing, the court set the matter again for Monday, January 4, 1993. Defendant filed a motion for summary dismissal on January 4, 1993.

## STANDING

■ At this hearing Plaintiff was there, pro se, and Defendant was represented by his counsel, Professor Anderson of the University of Miami. Plaintiff advised he was not a registered voter in the 23rd District, but was a registered voter in the 20th District which abuts the 23rd District in Broward County (Fort Lauderdale), Florida. Defendant is also a resident of Broward County.

When questioned by the court about his standing to sue, Plaintiff responded that it seemed logical that a citizen of an adjoining congressional district has a valid interest in having a lawfully qualified representative, not only in the citizen's district, but in a contiguous district as well. Plaintiff broadened his argument to urge that a citizen in one congressional district in Florida has not only an interest in contiguous congressional districts, but also in having lawfully qualified representatives elected from the entire state

---

1. For political background, although not critical to this decision, Defendant was the winner in the first primary in September, 1992—a primary unique because part of the district lies in Dade County (Miami), which received special permission to hold its primary election one week later than the rest of Florida due to the destruction of polling places, lack of electrical power, and unsafe travel caused by Hurricane Andrew in Dade County on August 24, 1992.

   The district stretches through Palm Beach, Broward (Fort Lauderdale) and Dade Counties, but is rather narrow in width in most places in the district. The district was created under the Voting Rights Act, as amended, to provide opportunities for minority candidates to the Congress. Although the district is 53% white, Defendant,

who happens to be a black person, was successful in the first primary thereby gaining a place in the run-off primary; then he defeated a white female State Representative in the Democratic run-off primary and a black male Republican opponent in the general election.

2. Because of the political importance and the timing of the matter, this court took the liberty of contacting the United States Attorney for this district in the evening of December 30, 1992 so that he could advise the United States Department of Justice. The court also telephoned Professor Anderson, who had represented Defendant in the past and left a message on his recording machine. The court further set a status hearing on the afternoon of December 31, 1992.

of Florida. Plaintiff declined to extend the scope of his argument further to include a valid interest in the representatives from states other than Florida.

There is an appeal to the logic of Plaintiff's argument about an interest of a citizen in having lawfully qualified representatives not only from the citizen's district, but also from adjoining districts, particularly in one's own county. The districts created in Florida by a three-judge federal court are no longer required to meet the former goals of compactness. Indeed, Broward County (Fort Lauderdale) has four districts, two of which resemble long, jagged bacon strips running side by side from Palm Beach County through Broward County and into Dade County (Miami).

However, this court can find no basis for concluding that Plaintiff has standing to challenge the legal qualifications of a representative from a different district and this court, therefore, dismissed the complaint.[3]

## NECESSARY PARTIES

Plaintiff has neither named nor served the Speaker of the House or the Clerk of the United States House of Representatives. Although that could be cured by permitting Plaintiff to amend, it is unnecessary in view of this order's ruling on the merits.

## JURISDICTION

Clearly, the House of Representatives has jurisdiction to determine the qualifications of its own members. U.S. Const. art. I, § 5. Nothing in this order can, or will, disturb or question that power.

There are three stated requirements in the Constitution to become a member of the House of Representatives: be 25 years of

age, a citizen for seven years, and a resident of the state from which elected. U.S. Const. art. I, § 2. The gist of Plaintiff's contention is that Clause 7, of Article I, Section 3, *supra*, requires that a person, who is convicted on the judgment of impeachment be disqualified *ipso facto* under its language from holding an "... Office of honor, Trust or Profit under the United States...."

When asked during oral argument, both pro se Plaintiff and Defendant's counsel responded that a district court would have jurisdiction if a candidate had misrepresented his or her age and instead of being 25, the candidate was only 24. Mindful that parties cannot confer jurisdiction upon a court, even by stipulation, and aware that the United States Supreme Court expressly declined to decide a related question in *Powell v. McCormack*, 395 U.S. 486, 521 at footnote 42, 89 S.Ct. 1944, 1963 at footnote 42, 23 L.Ed.2d 491 (1969), it would seem that this case requires a court to review the matter—especially in view of the time constraints of the case—to see if Plaintiff could have a valid case on the merits. If Plaintiff's contention is correct that Defendant's judgment of conviction of impeachment must also disqualify him from holding future office, then removal from office by the impeachment process is tantamount to failing to meet a stated requirement;[4] if incorrect, the case is over.

## PLAINTIFF SEEKS TEMPORARY RESTRAINING ORDER

Among the four requirements[5] for the issuance of a preliminary injunction is a requirement that the Plaintiff/Petitioner show a likelihood of success on the merits.[6] This is a further reason to look to the merits of this issue.

---

**3.** During his argument at the hearing Plaintiff stated that a losing candidate had called him that morning expressing interest in becoming a party. This court did not dismiss with leave to amend for reasons that appear later.

**4.** See *Powell*, 395 U.S. at 520, n. 41, 89 S.Ct. at 1963, n. 41.

**5.** *Blackshear Residents Org. v. Romney*, 472 F.2d 1197 (5th Cir.1973) and *Canal Auth. of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974).

**6.** This court normally addresses the other three requirements first in a hearing where a restraining order is sought because the losing party at the hearing where a restraining order is sought must feel, albeit erroneously, the judge has made up his or her mind against the position of the loser and that such leaning will necessarily carry on through the final ruling. Again, because of the time constraints in the instant case, it is necessary to look at the merits of the question.

## MERITS OF THE QUESTION

■ The issue presented is whether the language of Article 1, Section 3, Clause 7 of the Constitution requires that any judgment of conviction of impeachment necessarily includes disqualification from holding future office under the United States. The judgment of conviction of impeachment for Defendant as returned by the Senate is as follows:

The Senate having tried Alcee L. HASTINGS, United States district judge for the Southern District of Florida, upon seventeen Articles of IMPEACHMENT exhibited against him by the House of Representatives, and two-thirds of the Senators present having found him guilty of the charges contained in Articles I, II, III, IV, V, VII, VIII, and IX of the Articles of IMPEACHMENT: It is Ordered and adjudged, That the said Alcee L. HASTINGS be, and he is hereby, removed from office. 135 Cong.Rec. H3780–02, (1989)

The record does not reflect any specific action taken by the Senate to disqualify Defendant from future office.

Much was written by the Framers about the subject of impeachment, but this court has been unable to locate (and nothing has been cited by the parties) any material written on this specific issue. However, Judge Story has made brief observations in his commentaries as follows:

As it is declared in one clause of the constitution, that "judgment, in cases of impeachment, shall not extend further, than a removal from office, and disqualification to hold any office of "honour, trust, or profit, under the United States;" and in another clause, that "the president, vice-president, and all civil officers of the United States, shall be removed from office on impeachment for, and conviction of treason, bribery, or other high crimes or misdemeanours;" it would seem to follow, that the senate, on the conviction, were bound, in all cases, to enter a judgment of removal from office, though it has a discretion, as to inflicting the punishment of disqualification.

J. Story, *Commentaries on the Constitution of the United States* 288–89 (R. Rotunda & J. Nowak eds. 1987).

The last judgment of conviction of impeachment of a federal judge prior to the wave of impeachments in the 1980s[7] was of Judge Ritter, also of this district, in 1936. Judge Halsted L. Ritter was convicted of only one article of impeachment by the bare constitutionally required two-thirds vote of Senators present, 56 votes to 28[8]. A judgment was proposed which would both have removed him from office and disqualified him from holding any future office of "honor, Trust, or Profit under the United States." Senator La Follette asked the president of the Senate to divide the question as to the final judgment between removal from office and future disqualification. After a short period of debate, the president *pro tempore* ruled that division of the question was appropriate.[9] However, a motion was made to disqualify Judge Ritter from holding future office. Upon a specific inquiry by a senator to the president *pro tempore* about whether the motion to disqualify could be passed by a majority or if it required a two-thirds vote, the chair ruled a majority vote was sufficient, citing the *Archbald* impeachment. The motion to disqualify failed, 76 to 0. 74th Cong.2d Session, Senate Proceedings in the Trial of Impeachment of Halsted L. Ritter at 641 (1936).

Plaintiff argues that Article 1, Section 3, Clause 7 is a mandatory penalty clause and not merely a limitations clause as is argued by Defendant. Plaintiff relies on a vast spectrum of sources ranging from Alexander Hamilton to Judge Sporkin in his opinion in *Hastings v. United States,* 802 F.Supp. 490 (Dist.D.C.1992). Hamilton proposed to the

---

7. Judges Claiborne, Hastings and Nixon.

8. Rehnquist, *Grand Inquests,* at 119 (1992).

9. This practice of dividing the vote has been officially adopted by the Senate in its Procedure and Guidelines for Impeachment Trials in the United States Senate. S.Doc. No. 99–33. At pages 51–52 of that document, the Senate cites the impeachment trials of Judge Ritter and Judge Archbald in support of the practice of dividing the questions between removal from office and future disqualification.

constitutional convention that upon an impeachment conviction the official is "to be removed from office and disqualified from holding any place of trust or profit." 1 The Documentary History of the Ratification of the Constitution 254, Jensen, ed. (1978). Plaintiff points out that the clause above has no comma separating the removal from office and future disqualification. Even if Plaintiff's interpretation of the sentence's punctuation gives the clause the meaning he proposes, the fact that the clause was passed with the comma would, if anything, weaken Plaintiff's position.

Plaintiff's reliance on Judge Sporkin also does not necessarily bolster his argument. In dictum, Judge Sporkin suggested that a judge who has been impeached "*may* never again be able to hold an office of public trust." (emphasis added) *Hastings*, 802 F.Supp. at 510. Even if the court would adopt Plaintiff's reliance on the language and/or syntax of a particular passage, the use of the word "may" by Judge Sporkin seems to support Defendant's position under Clause 7 that the Senate has the discretion to impose the additional penalty of future disqualification to hold office.

Plaintiff also argues that giving the Senate the discretion to impose disqualification and removal in one case and only removal in another would amount to a bill of attainder. While this argument may be fertile ground for academic debate, this court must decline Plaintiff's invitation to write such a novel theory into the law. Plaintiff has not cited any authority which would support his position.

Judge Story's observations, the rules of the senate, and the examples of the Ritter and Archbald opinions all support Defendant's position overwhelmingly.

### SUMMARY JUDGMENT

■ The Eleventh Circuit requires thirteen days' notification by a district court that it intends to have a hearing on a motion for summary judgment or that the court intends to consider the motion for summary judgment without a hearing.

This case seems to fall within an exception to that thirteen day requirement, not only because of the time constraints involved, but also because Plaintiff indicated there was no other evidence to offer and no further argument to be made. Both parties were given a chance to present argument at length on Plaintiff's complaint and Defendant's motion for dismissal on January 4th, one day before Defendant was to be sworn in. Consequently, this court feels the thirteen day notice requirement is unnecessary and no bar to the court's considering the motion for summary dismissal as a motion for summary judgment.

Therefore, this court grants summary judgment to Defendant and also Defendant's motion for dismissal and does so with prejudice on the merits for the reasons contained in this order.[10]

DONE AND ORDERED this 23 day of March, 1993, *nunc pro tunc* January 4, 1993.[11]

---

10. The gist of this ruling was announced in open court on January 4, 1993 at the close of the hearing, but the court advised that it would file a detailed order subsequently; hence, this order.

11. Between the dismissal on January 4, 1993, and the filing of this order, the Supreme Court ruled on January 13, 1993 that petitioner's challenge to the Senate's practice of referring impeachment trials to a committee to hear evidence was not justiciable. *Nixon v. United States*, —— U.S. ——, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993). The ruling seems to vitiate Judge Sporkin's ruling in favor of Defendant, *supra*.